## THE MECHANICS' INSURANCE COMPANY OF PHILADELPHIA

*v.*

## CHESTER A. HODGE.

*Filed at Ottawa March 31, 1894.*

1. INSURANCE — *successive fires—liability for losses.* Where a loss occurs within the terms of a policy against fire, which loss does not amount to the sum insured, the policy will still continue in force, and for a subsequent loss within its terms a recovery may be had not exceeding the full amount of the policy. And when loss results by reason of successive fires, and no part is paid, the recovery to be had on the policy by reason thereof is a single sum, constituting one loss.

2. SAME—*agreement to arbitrate—severing claims.* Where such successive fires have occurred and the loss has not been in any manner paid, a provision in the policy that the loss shall be determined by the parties, and that in case of differences arising, then, at the written request of either party, the matter shall be submitted to arbitration, does not contemplate a submission of different items of loss to different arbitrators, or a settlement of a part of the loss by arbitration and a part by the courts.

3. In such case, a request by the company's agent for an arbitration, to determine the loss and damage under the first fire, made twenty days after the loss by the second fire, is not such as is contemplated by the policy, and is one to which the assured need not accede. He is not bound to split up his cause of action. The insurer has no right to demand an arbitration except as to both losses.

4. SAME—*waiver of right to arbitration.* A clause in a policy of insurance that no suit for the recovery of any claims should be sustained until after an award shall be obtained by arbitration, is one that the parties may waive. The failure of the parties to demand such arbitration, and the denial of liability by the defendant, will amount to a waiver.

5. SAME—*increased hazard—notice to agent.* The object of an insurance company requiring the insured to give notice of any increased hazard within his control is to enable the company to take steps to protect its interests; and notice of the facts constituting the increased hazard, to the agent of the company, is the same as notice to such company. When the agent has all the knowledge of increased danger that the assured has, notice to such agent is not required.

6. SAME—*on personal property—policy construed to apply to buildings.* A clause in a policy of insurance of personal property kept in a

leased room contained a clause : "Mechanics will be allowed to make ordinary alterations and repairs to buildings, not exceeding fifteen days. Any extension of this privilege must previously be consented to by this company, in writing," etc.: *Held,* that such clause, by its terms, does not apply to personal property, but to buildings.

7. It may well be held, the object, purpose and intent of that clause were to only apply to the repair or alteration of a building under the control of the assured. Any other construction would be to practically render invalid insurance of personal property under a policy with such a clause.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county ; the Hon. FRANK BAKER, Judge, presiding.

Appellee brought suit on a policy of insurance issued by appellant, and recovered a judgment in the circuit court of Cook county for $1135, which was affirmed on appeal to the Appellate Court for the First District. An appeal is now prosecuted to this court.

The evidence shows that at the time of issuing this policy the appellee was a manufacturer of spur wire machines for making fence wire, and his place of business was on the second floor of Burton's Block, which was on the corner of Clinton and Van Buren streets, in the city of Chicago, appellee being a tenant. Burton's Block was a brick building six stories high, built for manufacturing. The different parts of this building were let to different persons, each independent and separate manufacturers or in separate business enterprises. On the same floor with appellee were two other tenants, one, Roberts of the spur wire fence company. Other enterprises were conducted on the other floors. This policy was issued on the stock and machinery of appellee situated in that part of the building occupied by him. A fire occurred in that building, greatly damaging it, on June 28, 1889, and appellee sustained damage on his insured property. In July the company was furnished with an invoice of the property of appellee damaged, and on September 7, 1889, proofs of loss were

furnished the company. Whilst negotiations for settlement were proceeding, appellee removed certain small articles to 793 Warren street, and took from Burton's Block, and sold, two spur wire machines for $1600. One Marshall, an adjuster for the company, then said to appellee he must not take anything from the building until the loss was settled. During the pendency of negotiations for the settlement of this loss a second fire occurred, on September 11, 1889, by which all of appellee's property remaining in the building was destroyed, except as might be its value as old iron. A short time after the fire of June 28, the owner of the building commenced to repair the same, and work in repairing continued until the time of the second fire.

October 2 and October 31, Marshall, the adjuster, in the name of the two companies that had issued the policies, wrote to Hodge, asking for an arbitration to determine the loss and damage under the fire of June 28, and named one McDonald as their arbitrator, asking the assured also to name one. To these letters Hodge made no reply. On September 18 the company wrote to Hodge, saying that they had learned of the second fire, and that he had machinery in the ruins upon which he claimed a loss, and requesting him to get the property out from the ruins and in shape so that his claim might be definitely arrived at and determined. September 28 the companies wrote to him, that "by reason of the extraordinary work being done on the building lately known as the Burton Block, they denied any liability for loss by reason of the second fire."

There was evidence tending to show that all the property before there was any fire, was worth $5200. That the three spur machines were then worth $2400, the patterns $250, and the remainder of the property $2550, making $5200. The total salvage was, on spur machines $1600, and on machinery $225, or $1825 in all.

Appellant excepts to the giving, refusing and modification of instructions.

The policy contains, among others, these clauses:

"This policy is subject to the following terms and conditions, and the assured by acceptance of this policy agrees to be bound thereby:

"A. The assured hereby covenants and agrees: 2d, to notify the company if the above mentioned premises shall become vacant or unoccupied, and so remain more than thirty days, or of any change in the nature or character of occupation, or of any increase of hazard within the control or knowledge of the assured.

"B. This policy shall become void and of no effect: 1st, by the failure or neglect of the assured to comply with its terms, conditions and covenants.

"E. Mechanics' risk: * * * 1st, mechanics will be allowed to make ordinary alterations and repairs to buildings, not exceeding fifteen days, during the term of this insurance. Any extension of this privilege must previously be consented to by this company in writing on this policy."

Other clauses are referred to in the opinion which it is not necessary to here state.

Messrs. BARNUM, HUMPHREY & BARNUM, for the appellant:

A local agent of an insurance company has no power to waive a condition of a policy requiring written assent to any change increasing the risk. May on Insurance, (3d ed.) sec. 137 a; *Insurance Co.* v. *Garland*, 108 Ill. 220.

The first and fifth instructions, under the covenants and conditions in this policy, and the testimony, were proper, and should have been given without modification. May on Insurance, sec. 221; *Insurance Co.* v. *Graves*, 100 Pa. St. 266.

Any change or alteration which materially increases the risk or hazard, without the consent of the company procured and endorsed in the manner provided by the policy, renders it

void and inoperative, at least during the progress and continuance of such change or alteration. *Schmidt* v. *Insurance Co.* 41 Ill. 295; *Insurance Co.* v. *Wetmore*, 32 id. 245; *Insurance Co.* v. *McDowell*, 50 id. 120; *Insurance Co.* v. *Garland*, 108 id. 222; *Kern* v. *Insurance Co.* 40 Mo. 19; *Howell* v. *Equitable Society*, 16 Md. 377; *Mack* v. *Insurance Co.* 106 N. Y. 506; *Insurance Co.* v. *Rowland*, 66 Md. 326; *Lyman* v. *Insurance Co.* 13 Allen, 329; *Crone* v. *Insurance Co.* 3 Fed. Rep. 558.

The policy makes an arbitration, when demanded in writing, a condition precedent to the sustaining of a suit for any claim under it. *Insurance Co.* v. *Hamilton*, 136 U. S. 242; *Scott* v. *Avery*, 5 H. L. Cases, 811; *Insurance Co.* v. *Badger*, 53 Wis. 283; *Elliott* v. *Assurance Co.* L. R. 2 Exch. 237; *Old Saucilito L. and D. D. Co.* v. *Insurance Co.* 66 Cal. 253; *Adams* v. *Insurance Co.* 70 id. 198; *Carroll* v. *Insurance Co.* 72 id. 297; *Gouche* v. *Insurance Co.* 4 Wood, 103; *Coal Co.* v. *Coal Co.* 50 N. Y. 250; *Hamilton* v. *Insurance Co.* 136 U. S. 242; *Insurance Co.* v. *Steiger*, 109 Ill. 254.

Mere knowledge of a fact on the part of an agent is not equivalent to a notice, nor is it a waiver of the notice. May on Insurance, (3d ed.) sec. 152, and cases there cited; *Riply* v. *Insurance Co.* 30 N. Y. 136; *Insurance Co.* v. *Garland*, 108 Ill. 220.

An adjuster has no authority to waive a forfeiture. *Hallos* v. *Insurance Co.* 65 Iowa, 454.

Mr. W. F. WIEMERS, and Mr. U. P. SMITH, for the appellee:

The notice of increased hazard required by the policy might be waived by the company. May on Insurance, (3d ed.) secs. 142-144, 216, 221, 222, 502, 502 a; Wood on Fire Insurance, (2d ed.) sec. 426; *Insurance Co.* v. *White*, 106 Ill. 75; *Insurance Co.* v. *Rinner*, 28 Gratt. 88; *Kruger* v. *Insurance Co.* 72 Cal. 91.

Having knowledge, through its general agents, of the alleged increase of hazard after the first fire, and not cancelling the

policy, as it had a right to do, the company is estopped from founding any objections on that ground. May on Insurance, secs. 150, 246, 249 i, 249 j; Wood on Fire Insurance, 605; *Insurance Co.* v. *Steiger,* 124 Ill. 81; *Insurance Co.* v. *Jones,* 62 id. 458; *Insurance Co.* v. *Cary,* 83 id. 453; *Hotchkiss* v. *Insurance Co.* 5 Hun, 91.

Where, pending the risk, the insurer, knowing that the assured has broken some condition of the policy, does an act recognizing its continued existence and validity, the breach is waived. *Insurance Co.* v. *Travelstead,* 29 Ill. App. 654; *Insurance Co.* v. *Grunert,* 112 Ill. 68; *Schimp* v. *Insurance Co.* 124 id. 354.

The law is well settled that if the insurance be for a specific amount for a given period, and one loss be less than the amount insured, the policy will remain good for the unexpended balance during the period covered by the policy. May on Insurance, (3d ed.) sec. 426; *Trull* v. *Insurance Co.* 3 Cush. 263; *Curry* v. *Insurance Co.* 10 Pick. 535; *Crombie* v. *Insurance Co.* 6 Fost. 389; *Insurance Co.* v. *Perkey,* 92 Ill. 164.

Mr. JUSTICE PHILLIPS delivered the opinion of the Court:

Where a policy of insurance is issued and a loss occurs within the terms of the policy that does not amount to the sum insured, the policy will still continue in force, and for a subsequent loss within its terms a recovery may be had, provided the sum recoverable may not, with that paid, exceed the amount insured by the terms of the policy. (*Curry* v. *Commonwealth Ins. Co.* 10 Pick. 535; *Trull* v. *Roxbury Mutual Ins. Co.* 3 Cush. 263; *Crombie* v. *Portsmouth Mutual Ins. Co.* 6 Fost. 389.) And where loss results by reason of successive fires, and no part is paid, the recovery to be had on the policy by reason thereof is a single sum, constituting one loss. Where such successive fires have occurred, and the loss has not been in any manner paid, the provisions of a policy providing the

loss shall be determined by the agreement between the company and the assured, and if differences arise such differences shall, at the request, in writing, of either party, be submitted to arbitration, do not contemplate a submission of different items of loss to different arbitrators, nor look to the settlement of part of the loss by arbitration and another part to be determined by the adjudication of the courts. The loss to be determined by agreement, or, if differences shall arise, to be determined by arbitration, is the loss sustained by the assured under the terms of the policy. The request of the adjuster asking for an arbitration to determine the loss and damage under the fire of June 28, made more than twenty days after the loss by the second fire, was not a request to submit to arbitration the loss or damage sustained by the assured under the policy. It was not a request that, by the terms of the contract, the insured was bound to accede to. The company would have as much right to insist that each article destroyed was a separate loss, and an arbitration be had before different arbitrators as to each item destroyed. The company would have no right to place the assured in the position that he must split up his cause of action into several different causes of action.

The second, third and fourth instructions asked by appellant were upon the question of arbitration as to loss by the first fire, and were refused by the court, which refusal is assigned as error. Those instructions sought to state as law that the company, after the second fire, had a right to demand and have an arbitration as to the loss and damage by the first without demanding it as to the second fire. They did not state a correct rule of law, and it was not error to refuse them. And no offer, in writing, was made or requested until after the second fire. The appellee therefore was never placed in a position of declining a reference to arbitration.

The proof of loss by the first fire was made within the time required by the terms of the policy. After the second fire,

and on September 18, the company wrote appellee, saying they had learned of the second fire, and that he had machinery in the ruins upon which he claimed a loss, and requesting him to get it from the ruins that his claim might be determined.    On September 28 the appellee was notified by the companies that "by reason of the extraordinary work being done on the building lately known as the Burton Block, they denied any liability for loss by reason of the second fire." The company had been notified by letter of the loss consequent on that second fire.    The policy contains provisions substantially as follows:

"A.    The assured hereby covenants and agrees to notify the company if the above mentioned premises shall become vacant and unoccupied, and so remain more than thirty days, or of any change in the nature or character of occupation, or of any increase of hazard within the control or knowledge of the assured.

"B.    This policy shall become void and of no effect:  1st, by the failure or neglect of the assured to comply with its terms, conditions and covenants.

"E.    Mechanics' risk:    *  *  *    1st, mechanics will be allowed to make ordinary alterations and repairs to building, not exceeding fifteen days, during the term of this insurance. Any extension of this privilege must previously be consented to by this company, in writing, on this policy."

It is urged, first, that there was a material increase of hazard, within the knowledge of the assured, by reason of the work in and about repairing the building, and that he failed to notify the company of that increased hazard.    The object and purpose of that clause were, that the company should have notice of any increased hazard, and the evidence of James F. Marshall is that he was adjuster for the company.    His evidence as abstracted by the appellant is:  "A short time after the fire, workmen were sent there to put on a new roof and fire walls and partition and windows.    I should say between

20—149 ILL.

twenty-five and thirty workmen, and perhaps more than that, were at work in the various parts of the building shortly after the fire, rebuilding, and repairing the damage done by the fire to the building, and getting it in a tenantable condition. A large number of workmen were there. I was in and out of the building from two to three months. This work commenced three or four days after the fire, and was continuous right along. The effect of a large number of workmen in a building is to increase the hazard. It was a material increase. It was safer with the walls down than with the workmen there. The increase of the risk or hazard was considerable—was greater by reason of these alterations and improvements." The evidence shows that Marshall was at the premises with appellee. Appellee knew that Marshall had all the knowledge in that regard that he possessed. Marshall knew all that appellee was aware of. Marshall represented the appellant. The appellant knew all that was known in that behalf by Marshall. A notice to Marshall would have been notice to the company. To say that appellee must notify Marshall would be to require an absurdity. The object of the clause was that the company should know the circumstances surrounding, and it did know them.

By the provisions of the policy it was provided that "mechanics will be allowed to make ordinary alterations and repairs to building, not exceeding fifteen days, during the term of this insurance. Any extension of this privilege must previously be consented to by this company, in writing, on this policy." This written clause of the contract for insurance is to be construed to determine its meaning, purpose and intent. In determining and construing this provision of the policy, resort can only be had to the policy itself, and the meaning of the language used. It will appear from an inspection of the policy that many of its provisions have reference to insurance of buildings. For instance, the reference to "plans, survey and description," etc., and "buildings intended to be secured

shall stand on ground owned in fee simple;" "to notify the company if the premises shall become vacant and unoccupied;" "if during this insurance the above mentioned premises be used," etc.; "frescoed work, etc., not covered by insurance on the building." These provisions all form a part of this policy of insurance, and the conclusion results that the same form of policy, in its general terms, is used alike for insurance of personal property or buildings constituting a part of the realty. Such being the case, the provision as to mechanic's risks may well be construed as applying to cases of insurance of buildings, only,—one of the ordinary printed covenants of a policy, it would appear, whether in the insurance of a building, or of hay in a rick, or lumber piled away from a building, or a stock of goods. No application of the terms as to mechanics' risks could be made to the case of lumber not in a building or hay in a rick. Its application, by its very terms, is only to a building insured. "Mechanics will be allowed to make ordinary alterations and repairs to building," etc. This, by its terms, does not apply to personal property, but to buildings, to which ordinary alteration and repairs may be made.

Where, as in the city of Chicago, immense buildings are erected and parts of such buildings leased to different tenants, who do not, in any manner, have charge or control of any part of the building other than the particular room occupied by such tenant, repairs and alterations may be going on on other floors or on other parts of the building, of which a tenant had no notice, and may be continued for more than fifteen days with such tenant ignorant of such work. It may well be held that the object, purpose and intent of that clause were to only apply to the repair or alteration of a building under the control of the assured. Any other construction would be to practically render invalid insurance of personal property under a policy with such a clause, and could not have been the purpose or object of the company,—at least the language

used will not admit of a construction that such was the purpose. We hold the language as to mechanics' risk, as used in this policy, was only intended to apply to cases where buildings were insured under the control of the assured.

The first instruction asked by the appellant was refused, to which the defendant excepted. That instruction was:

"If the jury believe, from the evidence, that the hazard to the insured property was considerably increased by work and workmen engaged in reconstructing and repairing or altering the building, from shortly after the first fire to the time of the second fire, and that the plaintiff had knowledge of such facts so increasing said hazard, and that he did not notify the company thereof, and that the consent of the company to the continuance of such work beyond fifteen days was not asked nor obtained and indorsed in writing on the policy, then the policy, by reason of such considerable increase of the hazard, became and was void, even if you believe, from the evidence, that the witnesses Marshall or Hunter saw the progress of said work, and knew of such increase of hazard thereby."

The instruction sought to state as law that a failure to notify as to the increased hazard,-and the continuance of the work beyond fifteen days without the consent of the company, rendered the policy void, even though agents of the company saw the progress of the work, etc. We have already held that the agent having knowledge as to the increased hazards was notice to the company, and the policy covering only personal property, the clause as to mechanics' risk did not apply to it, and it was not error to refuse the instruction.

The fifth instruction asked by appellant was given as modified, as follows:

"If you believe, from the evidence, that shortly after the first fire, and from that time forward until the second fire, there was a material and considerable increase of hazard from fire to the insured property, occasioned by reconstruction of the premises and building *mentioned in the policy*, and changes,

alterations and repairs of the same, and by the continuous presence during that time in said premises and building of a large number of workmen and mechanics engaged in said work, and that the plaintiff, during all of said time, had knowledge of said continuous work by said workmen, and that the plaintiff did not notify the company of said facts so known to him and so increasing said hazard, *and that the agents of the company at Chicago, named in the policy, did not have knowledge of such fact while such work was in progress,* then you are instructed that the policy in this case, by reason of said increased hazard, became and was wholly void, and in that case no verdict can be rendered upon it as to the loss or damage by the second fire."

The modification, as made by the court, was by the insertion of the words in italics. This instruction proceeds on the theory that the continuous work by workmen increased the hazard, and no notice was given, etc., whereby the policy was rendered void. The modification was in accordance with what we have heretofore said, and it was not error to so modify that instruction.

It is further urged that the clause which provided that no suit for recovery of any claim under this policy shall be sustained until after an award shall have been obtained in the manner provided, is a bar to this action. The parties had a right to waive the clause as to an award, and the plaintiff never requested it, and the defendant never made a request that required the plaintiff to act, and this clause was waived by the parties. The denial of liability under the second fire was a waiver. *Williamsburg City Fire Ins. Co.* v. *Cary,* 83 Ill. 453.

Other questions raised are questions of fact, settled by the judgments of the circuit and Appellate Courts.

We find no error in the record, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*