# PROGRESS SPINNING AND KNITTING MILLS COMPANY v. SOUTHERN NATIONAL INSURANCE COMPANY.

No. 2398. Decided January 29, 1913 (130 Pac. 63).

1. INSURANCE—FIRE INSURANCE—CONDITIONS—ADDITIONAL RISK.
Where a fire policy issued upon a building described as a water power woolen mill provided that it should be void if the hazard was increased by any means within the control or knowledge of the insured, the policy became void upon the insured's beginning the exclusive manufacture of cotton bats, which was much more likely to cause fire than manufacture of woolen goods. (Page 265.)

2. Insurance—Conditions—Waiver. A condition in a fire policy that it should become void if the risk be increased by any means within the control or knowledge of the insured, being for the benefit of the insurer, may be waived. (Page 267.)

3. Insurance—Fire Insurance—"Waiver"—What Constitutes. A waiver of a condition in a fire policy operates as an estoppel ·on the party who waives, and it is not essential that the party in whose favor it is made must prove all the elements of an estoppel *in pais*, consequently a condition in an insurance policy that it should be void if the hazard was increased by any means within the knowledge of the insured is not waived because the agent of the insured inspected the property which was described as a woolen mill about a year before the fire, and before the insurer had begun the manufacture of cotton bats which caused the conflagration.[1] (Page 267.)

4. Appeal and Error—Review—Harmless Error. In an action on a fire policy, where the evidence was not in conflict, and the jury could have rightfully returned only one verdict, the verdict is equivalent to a directed verdict, and any errors committed are harmless. (Page 269.)

Appeal from District Court, Third District; *Hon. C. W. Morse,* Judge.

Action by Progress Spinning and Knitting Mills Company against the Southern National Insurance Company.

Judgment for defendant. Plaintiff appeals.

Affirmed.

*Stewart, Stewart & Alexander* for appellant.

*Soren X. Christensen* for respondent.

FRICK, J.

Appellant brought this action upon a fire insurance policy to recover a loss by fire of property covered by said policy. The cause was tried to a jury, who returned a verdict for the insurance company, the respondent here. The court

---

[1] Loftis v. Insurance Co., 38 Utah, 532, 114 Pac. 134.

entered judgment upon the verdict, from which this appeal is prosecuted.

Respondent admitted the issuance and delivery of the policy, admitted the fire and the loss, but interposed various affirmative defenses, among which was one that at the time of the fire the policy in question was not in force "for the reason that the said policy contained a provision that if the hazard was increased by any means within the control or knowledge of the insured said policy should be void." It is accordingly averred in apt terms that the property described in the policy, after the insurance thereof, was, by the insured, devoted to a use which greatly increased the hazard or risk of destruction by fire without the knowledge or consent of the insurer. The facts constituting the increased hazard are fully set forth in the answer.

The property that was covered by the policy was described thus: Five hundred dollars on one and two-story shingle and metal roof frame building, occupied as water power woolen mills and dyehouse, four hundred dollars on machinery and fixtures "while contained in the above-described building." The other items covered by the policy, amounting to one hundred dollars additional, are not material here. At the trial, after the evidence was all in, both parties moved for a directed verdict, which the court denied.

We have carefully read all the evidence adduced at the trial as the same is preserved in the original bill of exceptions, and we agree with counsel on both sides that there is practically no conflict in the evidence, which, with respect to the defense referred to, was in substance as follows:

That at the time of the fire the insured property was used exclusively for the manufacture of "cotton bats;" that the fire originated in a machine while in operation that was used in making said cotton bats; that the use of such machines and the manufacture of cotton bats is extremely hazardous; that the making of cotton bats is much more hazardous than the manufacture of woolen bats or woolen yarns. Indeed, it is beyond controversy that, in order to make cotton bats with any degree of safety, the work should be done in a fireproof

building or apartment, and that the building in which the cotton bats in question were manufactured by appellant was not fireproof. Counsel for appellant do not question the proof with respect to the great hazard which surrounds the manufacture of cotton bats. The president of the appellant corporation, as well as all of its witnesses, conceded that to be a fact. Counsel contend, however, that the property was insured as "woolen mills," and that it is usual in the conduct of such mills to manufacture cotton bats, cotton yarns, or fabrics composed of both wool and cotton in connection with the manufacture of woolen goods generally. There is evidence in the record to the effect that at least in some woolen mills there were also manufactured cotton goods and cotton fabrics, but the evidence to our minds is conclusive that a manufacturing plant which manufactures cotton bats exclusively is not and cannot come within the designation of a woolen mill. Moreover, it is practically conceded by all the witnesses who had the experience and testified upon the subject that the only safe method of manufacturing cotton bats is in a fireproof building or department where the fire can be confined to the machine where it originates. That the statements in the record made by the witnesses are well founded is abundantly demonstrated in the case at bar. The fire in question started in a machine while the operator thereof was working at it making cotton bats. This the foreman of appellant's plant testified was the usual and ordinary way fire starts in such machines. He, in effect, further testified that, when fire starts in such a machine, it is practically the same as a gunpowder explosion; that the fire in an instant envelops the whole machine and all the cotton that may be in, on or near it; that in the manufacture of woolens, although fire were caused by the use of the machine, yet the woolen fabric would not cause an explosion, nor would it burst into flame, but would only smolder, and therefore could be controlled, while a fire originating in a machine that was used to manufacture cotton bats, such as the one used by appellant, cannot be controlled. It is also true that one of the witnesses for appellant testified that he knew

of three so-called woolen mills that produced cotton bats in connection with woolen bats and other fabrics, but he admitted that at least two of those mills were destroyed by fire within a short time after commencing the manufacture of cotton bats as aforesaid. Another witness testified that he knew of at least one so-called woolen mill in the east that manufactured cotton bats in connection with the manufacture of woolen goods. All of these witnesses, however, admitted that the manufacture of cotton bats is extremely hazardous so far as concerns the risk of setting fire, and in that regard much more hazardous than the manufacture of woolen bats or woolen fabrics. There is, therefore, no dispute in the evidence that the manufacture of cotton bats is much more hazardous than is the manufacture of woolen bats or woolen fabrics, or even fabrics composed of both wool and cotton. The attempt made by appellant, therefore, to show that in a few other instances so-called woolen mills also manufacture cotton bats or mixed woolen and cotton fabrics, can have no bearing upon the question involved here. We think no one would question the right of any woolen mill to also use cotton in its mill, and so long as the hazard is not materially increased, which is always a question of fact, the use of cotton in connection with wool could not be objected to; but when, as in this case, the mill is practically turned into a powder magazine, the insurer has a right to insist upon the conditions of the policy that the hazard shall not be materially increased by the insured with impunity.

Nor can the contention made by appellant be sustained that the agent of respondent knew to what use the insured property was devoted, and therefore the right to insist upon the condition in the policy was waived. The only evidence in the record upon that subject is that the agent of respondent, who lived in Salt Lake City, while the property in question was located in Springville, more than fifty miles distant from Salt Lake City, became "acquainted with the property" the year preceding the fire when a prior policy covering the same property was issued; that either he or some of his assistants had inspected the property either

before or after the present policy was issued. There is not a word of testimony, however, that either the agent who issued the policy or any of his assistants knew that the property was devoted to the manufacture of cotton bats. There is no evidence that either the agent or any one of his assistants was ever inside of the building, or, if so, that either knew anything about what appellant's methods of manufacturing were. No doubt such a provision in a policy, like all others that are made for the benefit of the insurer, may be waived, and this may be done either expressly or by implication; but a waiver implies knowledge of the actual conditions waived. In *Concordia Fire Ins. Co. v. Johnson*, 4 Kan. App. 10-11, 45 Pac. 723, in passing upon a like provision in an insurance policy, the court says:

"To constitute a waiver, however, there must be something more than mere knowledge on the part of the agent. His language or conduct must be such as to show an intention to waive the particular condition of the policy which is the subject of controversy, or to evidence his consent to any change made which affects the hazard of the risk, when consent is necessary."

In *Mechanics' Ins. Co. of Philadelphia v. Hodge*, 149 Ill. 298, 37 N. E. 51, in the headnote, the rule is stated thus:

"Notice of the facts constituting the increased hazard, to the agent of the company, is the same as notice to such company. When the agent has all the knowledge of the increased danger that the assured has, notice to such agent is not required."

When a waiver is claimed, the question of whether it is established or not may depend very much upon the nature of the condition or the thing which it is asserted was waived. As pointed out in *Loftis v. Insurance Co.*, 38 Utah, 532, 114 Pac. 134, "a waiver operates as an estoppel on the party who waives," yet "it is not (in all cases) essential to a waiver that a party in whose favor it is made must prove all the elements of an estoppel *in pais* before he is entitled to avail himself of the waiver." In a matter such as is claimed was waived here it must therefore appear that the agent of the company knew all of the facts and conditions concerning the

use of the property, and, after knowing them, permitted the policy to continue in force, or that he issued it with full knowledge of the facts and conditions which would avoid the policy. It may be that the language used by the Kansas court is a little too strong, since it implies that some affirmative act, and hence more than full knowledge upon the part of the agent is required. We think it is necessary, as stated by the Supreme Court of Illinois in the case above referred to, that it be shown that the agent who issued the policy had full knowledge respecting the use and condition of the property, and then from his acts and conduct, considered in connection with such knowledge, a waiver might be implied. A condition in an insurance policy like the one now under consideration is of the essence of the contract of insurance and should not be deemed to be waived, unless the company through its authorized agent or otherwise is shown to have had full knowledge that the property was not devoted to the use specified in the policy, and that the use to which it was being devoted materially increased the hazard. When such is made to appear, and it is also made to appear that after having full knowledge as aforesaid the company does not within a reasonable time cancel the policy but continues it in force, it may not thereafter, in case of loss through fire, insist upon the forfeiture of the policy.

In this case there is no evidence upon which a finding of a waiver could be based or justified. In view, therefore, that the evidence showing a material increase in hazard which was entirely under the control of the insured is practically without dispute, and that there is no evidence which would support a waiver, the jury, under their oaths, would not have been justified in returning any other verdict than the one that was returned. In legal effect, therefore, the verdict is the same as though the court had directed it as matter of law.

In view of the foregoing, the other assignments become immaterial, since the errors, if any were committed, are harmless.

We are of the opinion, in view of all the evidence, which, as we have seen, counsel for both parties by their requests conceded to be without dispute, the verdict and judgment are clearly right, and should be affirmed.          •

The judgment is affirmed, with costs to respondent.

McCARTY, C. J., and STRAUP, J., concur.