## JENSEN v. UTAH RY. CO.

No. 4566.   Decided November 4, 1927.   (270 P. 349.)
Rehearing Denied September 25, 1928.

*Willard Hanson* and *A. H. Hougaard*, both of Salt Lake City, for appellant.

*Van Cott, Riter & Farnsworth*. of Salt Lake City, for respondent.

STRAUP, J.

The plaintiff, a child 1 year and 11 months of age, by her guardian brought this action to recover damages alleged to have been sustained by her through the negligence of the defendant. The case was tried to the court and a jury, and resulted in a verdict in favor of the defendant. The plaintiff appeals.

The assignments are numerous. They chiefly relate to the court's charge, and to conduct of counsel for defendant arguing matters to the jury which, as claimed by the plaintiff, were withheld from the jury. We shall refer to only so much of the pleadings and evidence as is deemed necessary to the assignments considered by us.

The child was run over and injured on the defendant's railroad track by a train operated by the defendant. The accident occurred in a little town or settlement called Spring Canyon, in Carbon county, Utah. The theory of the complaint is that, because of numerous dwellings, apartments, cottages, a schoolhouse, a church, post office, and a store and bakery in close proximity to the track, and of a long custom or habit of persons and children living in the vicinity of the accident, and of others, using the track as a footpath in going up and down and across the track with the

knowledge and without objection of the defendant, it, among other things, became and was the duty of train operatives, in approaching the settlement and operating trains through it, to observe a lookout for the presence of persons and children upon and along the track in such close proximity thereto as likely to be struck by a moving train and give timely warning of the approach of the train, but that on the day in question the train operatives, in operating a train, negligently failed to observe a reasonable or any lookout for such purpose, failed to ring the bell or give any warning of the approach of the train, and negligently ran over the plaintiff, and so injured her as to necessitate the amputation of both her legs, one above and the other below the knee.

The defendant, by its answer, denied the alleged negligence, averred that the plaintiff was guilty of contributory negligence, and that the parents of the plaintiff were guilty of negligence in suffering and permitting the child "to be on and about the tracks of the defendant, where the said child had no right or license to be, and where it was known by said parents that such child was in great and imminent danger of being struck by engines, cars, and trains."

Much evidence was given by the plaintiff in support of the theory stated in the complaint. In such respect evidence was given to show that the defendant's railroad runs through a winding canyon in the mountains through the small towns or settlements of Peerless, Spring Canyon, and Standardville, but a short distance apart. A wagon road or highway also runs through the canyon parallel with the railroad track. About 100 families live at the settlement of Spring Canyon, who live in apartments, cottages, and other dwellings facing the highway, and between the highway and the railroad track, the outbuildings in the rear being within 10 or 12 feet from the track. The parents of the plaintiff lived in one of the apartments, consisting of 10 apartments. On the other side of the track and a little down the canyon was a schoolhouse, a church, a post office,

a store, a bakery, and other buildings. There were no sidewalks. The railroad track was open and unfenced.

At Spring Canyon the wagon road was narrow, at places only of sufficient width to permit two automobiles or vehicles to pass. The surface of the highway on either side was so rugged as not to admit of travel by pedestrians without considerable difficulty. For such reason, and because of the narrowness of the highway and of numerous automobiles traveling it, the highway was considered dangerous to pedestrians, especially children, and thus to a large extent was avoided by them. So pedestrians, including children, living at Spring Canyon and in that vicinity, instead of using the highway, used the defendant's railroad track in going up and down the canyon, and in crossing it to go to the schoolhouse, church, post office, store, and bakery. Most of the men living at Spring Canyon and in that vicinity worked in coal mines near by and in going to and from the mines also used the railroad track as a footpath. So, also, did others in going up and down the canyon. Such habit or custom was general, and existed for many years, as testified to by numerous witnesses on behalf of the plaintiff, and that such use was so made of the track with the knowldge of the defendant, and of its train operatives and without objection from any one.

Evidence was also given to show that at times children played about the track or in such close proximity thereto as to be in danger of being struck by passing trains, especially about a push or hand car left by the defendant just off and along the side of the track and at a sort of a trail leading in the direction of the apartments or houses below. Many of the children of parents living in the apartments and cottages played in the rear of them and in close proximity to the railroad track. Testimony was given to show that the children had no other outdoor place to play.

On the day in question, August 23, 1926, the father of the plaintiff, in the morning, left the apartment house where the parents of the child resided to go to work, as was his cus-

tom, in a coal mine near by up the canyon. His family consisted of his wife and two children, the plaintiff and a boy four or five years of age, and a maid. The mother, as she and her husband testified, was ill. In the afternoon of the day in question, and about a half hour before the accident, the mother, who with the plaintiff, was then on the porch, felt faint, as she testified, left the porch with the plaintiff, and went inside to lie down. She thought the maid was in the kitchen or about the premises. The mother, as she testified, as she lay down "dozed off" a short time. There is a controversy as to whether the maid then was about the apartment, or whether she had gone to one of the neighbors near by. In a short time the child strayed from the apartment and went on the railroad track near or opposite the push or hand car, where other children were then playing, and stood, in the middle of the track, when she was struck and run over by the train, between 4 and 5 o'clock in the afternoon on a clear day.

The principal use of the defendant's railroad was to haul coal from mines along the canyon near Standardville, Spring Canyon, and Peerless and other places and to serve persons living in settlements along the canyon.

On the day in question the defendant was carrying down the canyon from Standardville an engine and two empty box cars. The purpose of the trip was to carry the box cars from Standardville to Spring Canyon, where they were to be left, and then the engine to return to Standardville and later bring down loaded cars. In bringing the two box cars down the canyon, the engine was operated backward in front of the two box cars; that is, as the train came down the canyon, the tender of the engine was in advance of the engine running backward, the the two box cars in the rear. As the train thus came down the canyon, the fireman was on the left and the engineer on the right side, facing the front of the engine and the box cars. About 400 feet up the canyon was a curve in the track, the outside of the curve being on the engineer's side.

As the train approached the curve and was rounding it the view of the engineer was obstructed because of the curve, but after the train passed the curve the engineer had a view of the track in the direction in which the train was moving for a distance of about 335 feet to the place where the child was struck. The view on the fireman's side was not obstructed by the curve. He had a better view of the track, and for a longer distance, than had the engineer. On top of the rear box car were the head and rear brakemen and a car inspector. They also had a better view down the track than had the engineer, and as good a view as had the fireman. The train was moving down the track at a speed of about 10 miles an hour. Evidence was given to show that the train could have been stopped within a distance of 35 feet, and that no whistle was sounded or bell rung as the train approached.

The rear brakeman testified that he discovered the child standing on the track between the rails 45 or 55 feet ahead of the tender, just when the rear box car on which he was standing was on or leaving the curve, but that the engine then was on a straight track; that he called the attention of the head brakeman to the situation; that both, as loud as they could, called several times to the engineer and fireman to stop the train, that a child was on the track; that the brakeman also pounded the box car with clubs to attract the attention of the engineer and fireman, but to no avail because the noise of the engine, as they testified, prevented hearing the shouting and pounding of the brakemen.

Other witnesses testified that they were in one of the apartments and heard the outcry of the brakemen and the noise made by them; that they ran out of the apartment and saw the child on the track about 175 feet in advance of the train; that they tried to attract the attention of the fireman, they being on his side, but saw nothing of the fireman in the cab; that he did not have his head out of the cab window, and that they were unable to attract the attention of either the fireman or the engineer. Some of the witnesses

testified that the child was 200 or 250 feet in advance of the train when the brakemen began to shout. Other witnesses testified to unsuccessful efforts made by them to attract the attention of the engineer and fireman, and to stop the train before running over the child. The train ran about 400 feet after hitting the child. before the attention of the engineer and fireman was attracted and the train stopped, and, when it was stopped, neither knew anything of the happening of the accident. Evidence was also given to show that the seats of the fireman in the engine cab and of the engineer were nearly on a level with the top of the box cars.

The fireman testified that as the train came around the curve he was on his seat looking in the direction the train was going; that he saw nothing of the child, but saw a little boy farther up the track, running towards the track and placing something on the rail, then go back and sit on a rock or on an embankment about 15 feet from the track; that when the train came along the fireman shouted to the boy to stay away; that he looked around and saw some one chopping wood at the rear of one of the apartments or houses, and then looked down the track, but did not see anything of the child; that the next that attracted his attention was two men standing in the center of the track "waving us down, and I hollered to the engineer that we were flagged and he proceeded to stop," and on inquiry as to what was the matter they learned of the accident. Although the fireman, on questions propounded to him, testified with respect to his duties on the engine at the time in question, yet did not testify that he, during any of such time, was engaged in the performance of duties which prevented his looking down the track or observing signals from the brakemen.

The engineer testified that in rounding the curve his view down the track at the point of the accident was cut off because of the tender and tank in front of him, and that he was not able to see anything in the center of the track ahead of him closer than 134 feet; that, while his view was

shut off, the view of the fireman was improved, because he was on the inside of the curve and could see very close to the front of the train; that when the engineer's view was shut off from the track it was the duty of the fireman to keep a lookout along the track for danger, and that at the time in question the fireman was on his seat on his side of the cab; that he heard no shouting or pounding of the brakemen, and that when the fireman told him they were flagged he stopped in about two and a half car lengths, but on an emergency could have stopped in 55 feet and making a test could have stopped in less distance than that; and that until the train was stopped he had no knowledge of the accident.

There does not seem to be any dispute in the evidence that it was the duty of the fireman to observe a lookout; that in approaching the place of the accident the fireman had a clear view of the track, and that the engineer and fireman, had they looked, had a view of the brakemen and an opportunity to see signals given by them. The brakemen, however, testified that it was not their duty to observe a lookout along the track; that such was the duty of the engineer and fireman.

The superintendent of defendant, residing at Provo, Utah, among other things testified that the railroad track at places divided the canyon as the track extended through the towns of Peerless, Spring Canyon, and Standardville, and that there were dwellings on both sides of the track; that at Spring Canyon a majority of the residences were on the left side going up the canyon and Spring Canyon proper, including the schoolhouse, a church, post office, store, mining office, and other buildings, on the right side, and that the railroad track had to be crossed at different places in going from one side to the other; that there was not anything to be done to keep people from crossing the track; that they crossed it out of necessity to carry on their business; that children had to cross the track to go to and

from school and that there was no other way for them to go 'except to cross the track.

The witness was asked by counsel for defendant: "What is the rule in regard to trespassers on the property of the Utah Railway Company?" The witness answered: "The rule is that trespassing is not allowed." He further testified that he always instructed employees not to allow trespassing on their property, that he had so instructed the trainmen, and that he had made efforts himself to keep children away; that his business took him to Spring Canyon at least once a week and sometimes oftener, and that whenever he found children on or near the track in the vicinity of the accident he invariably enforced the rule regarding children trespassing, and insisted that they keep off the track whenever he saw them on the track; that he had solicited the support and co-operation of the superintendents of schools at Peerless, Spring Canyon and Standardville to keep children off the track, and on one occasion asked the sheriff of the county to assist him but what the superintendents or the sheriff did in such respect is not shown.

No other evidence was given to show that any other or different objections were made to the use of the railroad track as testified to on behalf of plaintiff. The foregoing is a substance of all the evidence bearing on the assignments about to be considered.

At the conclusion of the evidence the defendant interposed a motion for a direction of a verdict in its favor on the grounds: Want of sufficient evidence to show the defendant was negligent or that the injuries were due to any negligence on the part of the defendant; that the child was a trespasser on the defendant's right of way, and that there was not sufficient evidence to show that the child was "actually discovered" in a position of danger by the defendant in time to have avoided the injury; that the evidence was insufficient to show that the track, with the knowledge and acquiescence of the defendant, had been used by chil-

dren as a playground, and, though it be assumed that the
track was used as a footpath by pedestrians, yet the plain-
tiff was not making any such use of the track; that though
the defendant was required to anticipate the presence of per-
sons on the track, or to keep a lookout, yet the presence of
the plaintiff could not have been discovered in time to have
avoided the accident; that the evidence was insufficient to
justify a finding that the defendant, in the exercise of rea-
sonable care could have discovered the plaintiff in a position
of danger in time to have brought the train to a stop and
avoided the accident.

The motion was overruled. Thereupon the court, at the
request of the plaintiff, among other things, charged the
jury:

(7) "You are instructed that it is undisputed in the evidence
that at the place of the accident the tracks of the defendant were un-
fenced and that there were a large number of homes, residences, and
other buildings situated in close proximity to said railroad tracks, and
that for a number of years prior to and up to the time of the accident
said tracks had been used by pedestrians for the purpose of walking
and going thereon, and that there were a great number of small chil-
dren residing and living in said vicinity and in close proximity to
said railroad tracks, and that said children were in the habit of going
in and upon said tracks and along and upon the same, all of which facts
were known to the defendant railroad company. You are there-
fore instructed that, in operating its trains in the vicinity of the
accident, the defendant was bound to anticipate that there might be
persons upon its tracks at said point, and you are therefore instructed
that it was the duty of the defendant railroad company and those in
control of its trains to use reasonable diligence and precaution to pre-
vent injury to such persons and children who might be on its tracks
at said point and to keep a reasonable lookout for such persons on such
tracks."

(8) "You are further instructed that it is admitted that on August
4, 1926, the defendant was operating an engine and empty box cars
down its tracks at the point mentioned in evidence, and that the engine
was moving backwards ahead of the box cars, and that said engine
struck and ran over the plaintiff. If, therefore, you find from the
evidence that the servants of the defendant, in charge of the engine
at the time of the injury complained of, could have discovered by the

exercise of reasonable care, under the circumstances, the danger of the infant plaintiff in time to have avoided injuring her, but that the defendant's said servants negligently failed to use reasonable diligence and precaution to discover plaintiff on said tracks, and carelessly failed to use reasonable diligence and precaution to prevent injuring plaintiff, and as a result of such failure, if any, the defendant railroad company ran the engine against and upon the infant plaintiff, inflicting the injuries complained of, then you should return a verdict for the plaintiff."

(9) "You are instructed that in this action plaintiff is seeking to recover damages for injuries which she has sustained, in her own right and for her own benefit. In such an action, brought by a child in her own right and in her own behalf, the negligence of the child's father and mother, or either of them, can in no wise affect the right of the child to recover. So, even if you find from the evidence that the plaintiff's father and mother, or either of them, were guilty of negligence in not preventing plaintiff from going on the defendant's railroad tracks, such negligence of the father or mother, or both of them, cannot be imputed to the plaintiff, and does not constitute any defense to plaintiff's right to recover, if any."

(10) "Another defense set up by the defendant is that the injuries to plaintiff were caused by reason of the negligence of her parents in permitting the said minor child to be on or about the tracks of the said defendant. As to said defense you are instructed that there is absolutely no evidence of any negligence on the part of the parents in this regard, and further, even though there was such negligence, the same could not be imputed to the minor child, and you should disregard that defense in making up your verdict."

(11) "One of the defenses set up by the defendant is that the plaintiff, Elva M. Jensen, was guilty of negligence which proximately contributed to her injuries, and you are instructed that, as a matter of law, a child of the age of plaintiff cannot be guilty of negligence, and you should disregard that defense in making up your verdict."

The court, at the request of the defendant, further charged the jury:

(13) "You are instructed that it is not negligence for a fireman on a locomotive to attend to duties such as are necessary for the operation of the locomotive, even though such attention to such duties makes it impossible for the time being for such fireman to keep a lookout in the direction that the train is moving."

(14) "There is no greater or different duty owing by a property owner to discover the presence of an infant trespasser than an adult

trespasser. If an infant goes upon the property of another without right, such infant is as much a trespasser as an adult would be under the same circumstances."

(15) "You are instructed, if an adult or an infant trespasses upon the property of another, and the presence of such trespasser is actually discovered by the property owner, or by the exercise of reasonable care should have been discovered, that the duty owing to such trespasser by such property owner is to use ordinary and reasonable care toward such trespasser."

(16) "You are instructed that the defendant in this case is under no duty or obligation to the plaintiff to build a fence along its property for the purpose of keeping the plaintiff from going onto the defendant's track."

(17) "If you find from a preponderance of the evidence that the plaintiff, prior to going on the track, was in such a position that she could be seen, and that when she went on the track she could not be seen by the operators of the train, then their failure to see the plaintiff would not be negligence."

(22) "You are instructed that, if an adult or a child goes onto the property of another without any right so to do, such adult or child is a trespasser in so doing, whether the property in question belongs to a private person or a railroad company."

(23) "If you find from a preponderance of the evidence that the plaintiff was a trespasser at the time and place in question, and if you further find that the brakeman on the rear car of the train saw the plaintiff on the track in time, so that the train could have been stopped, if the engine operators had at that instant known of the presence of the child, nevertheless there would be no lack of due care on the part of the defendant or its employes or agents, unless you should further find that the warnings of the brakeman were actually heard or seen, or in the exercise of ordinary and reasonable care should have been heard or seen, by the operators of the engine in time so that they could have avoided the accident, or that the operators of said engine, by the exercise of ordinary and reasonable care, could otherwise have discovered the presence of the said plaintiff on said track in time so that they could have avoided the accident."

(28) "You are instructed that, if an adult, or infant traspasses upon the property of another, and the presence of such trespasser is actually discovered by the property owner, the only duty to such trespasser by such property owner is to use ordinary and reasonable care toward such trespasser."

The appellant urges that the charge given at the request of the defendant is in conflict with paragraphs 7 and 8 of the charge given at the request of the plaintiff, and in such particular invokes the rule stated in *Konold* v. *Rio Grande W. Ry. Co.*, 21 Utah, 379, 60 P. 1021, 81 Am. St. Rep. 693, that the giving of inconsistent instructions is error and sufficient ground for a reversal of the judgment, because, after verdict, it cannot be told which instruction was followed by the jury, or what influence the erroneous instruction had on their deliberations, and, as stated in Randall, Instructions to Juries, § 537, that where instructions of the successful party state an erroneous rule, and those of the defeated party state the rule correctly, the only presumption permissible is that the jury disregard the true rule for the false; that an error of an instruction presenting a wrong theory of the case is not cured by other instructions announcing a right theory; and that, where instructions are in irreconcilable conflict, or so conflicting as to confuse or mislead the jury the rule requiring instructions to be read together has no application.

On the other hand, the defendant contends that the charge is not in conflict, the charge at plaintiff's request in effect being but a charge on plaintiff's theory of the case, and the charge at defendant's request on its theory, and though the charge in the particulars claimed should be held to be in conflict, yet principles of law were erroneously given in the charge at plaintiff's request, but correctly stated in the charge given at the defendant's request; and thus whatever conflict there may be in the charge was induced or created by plaintiff, and hence she may not be heard to complain of such inconsistencies of her own creation, to support which the defendant cites *Wood* v. *Rio Grande W. Ry. Co.*, 28 Utah 351, 79 P. 182; *Pulos* v. *Denver & Rio Grande R. Co.*, 37 Utah 238, 107 P. 241; *Connell* v. *Oregon S. L. R. Co.*, 51 Utah 26, 168 P. 337.

The doctrine contended for by the defendant is of general recognition, as is shown by the cited cases. However, to ap-

ply the doctrine to the case in hand, it must not only be shown that the charge given at plaintiff's requests was wrong, but also that the charge given at the defendant's requests was right, and that on the record the jury properly could have rendered a verdict for the defendant by following the correct charge given at the defendant's request. It needs no elaboration to show that an inconsistent or erroneous charge on a material issue, the inconsistency of which is created by erroneous requests of both parties—when the requests of neither state the correct rule—may be complained of on proper exceptions and assignments by either party injured. The first question to be considered, therefore, is whether or not paragraphs 7 and 8 of the charge given at the request of the plaintiff are in conflict with the charge given at the request of the defendant. We think they are.

The charge in such respect is not fairly open to the contention that the one is merely charging on the theory of the plaintiff's case, and the other on the theory of the defendant. The charge contains two divergent and irreconcilable views as to the law applicable to the case. In the one, on the facts therein stated, the rule is announced that it was the duty of the train operatives to anticipate the presence of persons and children at the vicinity in question, and to observe a reasonable lookout for them and to use care not to injure them. Whether the charge in such respect sufficiently announces the correct rule will presently be noted. On the other hand, the charge given at the request of the defendant, without assuming any facts, and without any hypothesis, chiefly relates to ipso facto or active trespassers whose presence is not required to be anticipated, and to whom no duty is owing until actually discovered in a place of danger.

Such is the dominant thought conveyed by such portion of the charge. It is in harmony with the answer of the defendant that the child was a trespasser, to whom no duty was owing until actually discovered in a place of danger,

the question propounded to the defendant's superintendent what the rule was as to "trespassing" on the defendant's track, and the stated grounds for a direction of the verdict. Whether, on the record, the charge in such respect is correct or applicable to the case, will also presently be noted.

The plaintiff contends that the charge given at her request is correct, and is in harmony with and supported by the cases of *Young* v. *Clark,* 16 Utah 42, 50 P. 832; *Corbett* v. *Oregon S. L. R. Co.,* 25 Utah 449, 71 P. 1065; *Teakle* v. *San Pedro, etc., R. Co.,* 32 Utah 276, 90 P. 402, 10 L. R. A. (N. S.) 486; *Jensen* v. *Denver & Rio G. R. Co.,* 44 Utah, 100, 138 P. 1185. The defendant disputes that, and also urges that the court erred in stating in the charge, as was done, that there was no dispute in the evidence as to the facts therein assumed, and contends that the rule announced by this court in the case of *Palmer* v. *Oregon S. L. R. Co.,* 34 Utah 466, 98 P. 689, 16 Ann. Cas. 229, and as announced in other cases, is here applicable, and that the rule as announcd in the cases cited by appellant is not applicable.

As to the statement of the assumed facts, in paragraph 7 of the charge, that the track was unfenced, that a large number of homes and other buildings were situate in close proximity to the railroad track, that for a number of years prior to and up to the time of the accident the track had been used by pedestrians for the purpose of walking and going thereon, that there were a great number of small children residing and living in the vicinity and in close proximity to the track, that children were in the habit of going in and upon the track and along and upon the same, and that all of such facts were known to the defendant, the evidence is not in serious conflict. What, in such respect, on the evidence, chiefly divided the parties was whether or not such usage was with the consent or acquiescence of the defendant.

As to that considerable evidence was adduced by the plaintiff to show that such usage was not only with the knowl-

edge of the defendant, but also with its acquiescence. As against that is the testimony of the superintendent that, whenever he saw children on the track, he warned or ordered them away, gave instructions to operatives and other employes to do likewise, and solicited the superintendents of schools to aid and cooperate with him in keeping children off the track. So the most that may be said as to any conflict in such respect is, not with respect to the use made of the track, or that such use was without the knowledge of the defendant, but whether the use was with its consent or acquiescence. But as to that the charge does not state that the evidence was without dispute, or that the use made of the track was with the consent or acquiescence of the defendant.

As is seen, paragraphs 7 and 8 of the charge are silent as to such element or issue, and therein perhaps lies the fault of such charge. To bring the case within the rule contended for by the plaintiff, it was not only essential to show that the use was with the knowledge of the defendant, but also that it was with the defendant's consent or acquiescence, or the showing of circumstances or conditions from which the defendant's consent or acquiescence might reasonably be inferred. The rule in such respect is correctly stated in Young v. Clark, supra:

"We are of the opinion that when the community, situated as this was with reference to the bridge, have for 17 years been accustomed to use the bridge as a footpath, without objection, the company is chargeable with notice of such usage, and owes a duty to use reasonable care to prevent injury to persons that are liable to be crossing the same, even though they do so without authority."

In the case of *Jensen v. Denver & Rio G. Ry. Co.*, supra, the court again said:

"The decreased was not a trespasser. He was making such a use of the defendant's track and right of way as had others and the public generally for a long time, openly, with the knowledge and acquiescence of the defendant and of its employes operating trains along

such place. Train operatives, hence, were required to take notice of such usage, to anticipate the probable presence of persons on or near the track along there, and to observe a reasonable lookout for persons making such a use of the track, and timely to warn them of the approach of trains."

The same rule in effect is announced in *Corbett* v. *Oregon S. L. R. Co.*, supra, and in *Teakle* v. *San Pedro, etc., R. Co.*, supra.

We now look to the charge given at the defendant's request. Some of them, as abstract propositions, may not be at fault, but in so far as applicable to the case are erroneous in several particulars. Most of them are at fault in stating propositions wholly unrelated and unrestricted to, and regardless of, conditions or circumstances. The proposition stated in paragraph 22, that if a child or an adult goes upon the property of another, without any right so to do, such child or adult is a trespasser in so doing, may be true or untrue as applied or related to particular conditions and circumstances. However, the rule is pretty well established that, whenever railroad train operatives are approaching places where they have reasonable grounds to anticipate the presence of persons in places of danger on or near the track, there is imposed a duty upon them, not only to use care to avoid injury after discovery in a place of danger, but also to keep a reasonable lookout and be on the alert to anticipate their presence. Notes to numerous cases cited in the case of *Martin* v. *Hughes Creek Coal Co.*, 41 L. R. A. (N. S.) 267. Of course the rule is dependent upon the character, nature, and the relation of the usage and the knowledge and consent or acquiescence on the part of the railroad company or its train operatives. The trend of judicial opinion seems to be that in such case it does not so much matter whether the person injured technically be regarded a trespasser or a licensee. Perhaps confusion might be avoided if in such case the person injured while so on or using the track be regarded a licensee rather than an actual trespasser.

Similar observations may be made as to paragraph 28 of the charge, to the effect that, if an adult or infant trespasses upon the property of another, the only duty arising on the part of the owner is to use care after the presence of the trespasser is actually discovered. That again may be true or untrue, depending upon the particular condition or circumstance. The proposition is true under the conditions and circumstances shown in the case of *Palmer v. Oregon S. L. R. Co.*, supra, but untrue as shown in *Young v. Clark, Corbett v. Oregon S. L. R. Co.*, and *Jensen v. Rio Grande Ry. Co.*, supra. This paragraph, as paragraph 22, lays down a proposition wholly unrestricted and unrelated to any condition or circumstance, and regardless of any in the case upon the evidence of either the plaintiff or the defendant. Whether on a given or assumed state of facts a person is or is not a trespasser or otherwise, generally speaking, is a question for the court. By the charge given at the request of the defendant the question of whether the plaintiff was or was not a trespasser was largely left to the jury. The only guidance which the jury had was the mere abstract statement that, if an adult or a child goes upon the property of another without right so to do, he is a trespasser. But when a person has a right to do so, or more properly speaking, when he may do so without being characterized a trespasser, as matter of law, the jury were given no guidance, and were left to determine for themselves what in their judgment did or did not constitute a right. In that, the jury were given an unbounded field. The court did not, upon any stated or assumed facts, if so found by the jury, direct them as to the legal effect thereof as to the question of trespass.

As a general rule a trial court should not leave the jury to apply mere general principles of law to a case, as here was done by the defendant's requests. The court should give the jury what the law is as applied to the facts either stated or assumed, and if so found by the jury. The rule is well settled that instructing a jury, a mere abstract or gen-

eral statement as to the law should be avoided, and that all instructions should be applicable to evidence on either one or the other of the respective theories of the parties. Instructions which are not so applicable, though abstractly they may be correct, are not helpful to the jury, are apt to be misleading and to be improperly applied. That a proposition may be correct in a sense, and yet be inapplicable to the evidence or to the issue, is readily perceived. By the charge, or some of it, given at the request of the defendant, because unrestricted and unrelated, the jury could and may have taken the view that, though all that was testified to by the plaintiff's witnesses with respect to the use made of the defendant's track by pedestrians, adults, and children may be true, nevertheless the plaintiff, a child less than two years of age, was on the defendant's track without right or permission; that she had no right to be there, hence was a trespasser, to whom the defendant owed no duty until she was actually discovered in a place of danger.

Upon the evidence adduced on behalf of the plainiff, she, in line with the cases heretofore referred to, was entitled to a charge that the train operatives in the vicinity in question were required to anticipate the presence of persons on or along the track in such close proximity thereto as to be in danger of passing trains, and thus were required to observe a reasonable lookout for them and to use reasonable care not to injure them; and in such view and on such theory a charge that plaintiff was on the track without right, or was a trespasser, or on such assumed facts to leave the question to the jury whether she was or was not a trespasser to whom no duty was owing until actually discovered in a place of danger, was error. Such holding is not inconsistent with the cases of *Palmer* v. *Oregon S. L. R. Co.*, supra, or *Smalley* v. *Rio Grande W. Ry. Co.*, 34 Utah 423, 98 P. 311, for in such cases the facts are dissimilar, as may readily be perceived by comparing them with the facts in this case.

We also are of the opinion that the court erred in paragraph 23 of the charge, also given at the request of the defendant. The charge, again without guidance, ■ gives the jury an unbounded field to determine whether the plaintiff was a trespasser, implies that notwithstanding material facts in the case concerning which there was no dispute, or in silence of them, or unrelated to any facts, no duty was owing by the train operatives until the plaintiff was actually discovered in a position of danger, singles out particulars to the exclusion of others of equal importance, strips the case of all consideration of questions of anticipation of the presence of persons on or about the track at the place in question, and of duty to observe an outlook for persons at and about such place, absolves the engineer and fireman, as well as other train operatives, from anticipating the presence of persons on the track at the vicinity in question, or from observing an outlook by the engineer and fireman for signals from the brakemen, renders the discovery of the brakemen of no avail unless at the same instant the peril was also known to the engineer and fireman, who testified they had no knowledge until after the child was run over, or unless they heard the warnings of the brakemen pounding and shouting, which, as they testified, they could not hear, because of the noise of the engine, or unless they saw the signals of the brakemen, which they did not see, because they did not look for any.

Paragraph 21 is erroneous because it eliminates from consideration whether the child could have been seen, had a proper and sufficient outlook been observed. That the child, standing in the middle of the track as the train approached, could have been seen by a proper and sufficient outlook, is, on the record, without substantial dispute, except that it could not have been seen by the engineer as the train was approaching and rounding the curve. That, however, but called for a more vigilant outlook by the fireman or other trainmen, whose view was not obstructed.

Paragraph 13 likewise is erroneous. Whether as an abstract proposition such a charge is correct the authorities are in conflict. We need not now, and do not, determine whether as an abstract proposition such a charge is or is not correct, or the circumstances when a charge concerning such a subject may properly be given. It is enough to say, as we do, that there is not anything in the record to render such a charge applicable. There is not anything to show that the fireman, at the time and place in question, was attending "to duties such as are necessary for the operation of the locomotive." The evidence, without dispute, shows the contrary. The fireman did not claim he then was attending to any such duties. His testimony was that, as the train approached the place in question, he was looking part of the time at a boy placing something on the track, and part of the time looking down the track, in the direction the train was moving. Thus the charge falls within the familiar rule that it is error to give instructions based on a state of facts which there is no evidence tending to prove, or which the undisputed evidence in the case shows did not exist, even though such instructions contain correct statements of law.

We are thus of the opinion that the defendant by its requests induced the court to give a wrong charge, to the prejudice of the plaintiff and to an advantage to the defendant, to which it was not entitled, and whatever error, if any, there may be in the charge induced by plaintiff's requests, in no particular cured or contributed to the errors induced by the defendant's requests.

In this jurisdiction, arguments to the jury are made after, and not before, the charge of the court. As is seen, in paragraph 10 of the charge the court charged that "there is absolutely no evidence of any negligence on the part of the parents in this regard," in permitting the child to be on the track, and, though there were such negligence, it could not be imputed to the child, and

thus directed the jury to disregard such defense. In his argument to the jury counsel for defendant, over objections and exceptions of counsel for the plaintiff, in connection with other similar statements, stated to the jury:

"It little lies in the mouth of the plaintiff here to make a charge that we should have looked for this particular child, in view of the fact that Mrs. Jensen [the mother of the child], who was sitting on the back porch with this child in her charge, and with nothing else to do, permitted it to walk on the railroad track."

Further stated counsel for defendant to the jury:

"Suppose one of your children was in your charge, and you permitted it to walk into a place like that and get injured, would you consider that you were doing the right thing in charging somebody else with negligence?"

Colloquies between counsel and the court followed, counsel for plaintiff contending that the argument to the jury in effect was an argument that the mother of the plaintiff was negligent in permitting the child to get on the track, and that under the charges such a contention was not permissible. Counsel for the defendant urged that he was not seeking to impute negligence of the mother to to the child, but—

"the thing we are saying is that we have a right to show the surrounding circumstances here; we have the right to contend somebody else was negligent, as we now contend, and it is for the jury to say in the last analysis what the fact is."

When asked who the "somebody else" was whom it was claimed was negligent, counsel but answered that he be permitted to make his argument. The first quoted statement the court ruled was not improper, that the jury "under the charge and the evidence could take care of the situation." As to the second quoted statement the jury were instructed not to consider it. We see no substantial difference as to the effect of the two statements, both being an argument or statement, if not directly, yet by inference,

that the mother of the child was negligent in permitting the child to get on the track. And from the colloquies had it is quite clear that counsel for the defendant claimed the right, notwithstanding the charge, to argue such matter to the jury. From them we gather the contention of counsel for the defendant to be that, though the defendant was negligent, and though the mother also was negligent, yet if the negligence of both contributed to the injury, the negligence of the mother it was conceded would not defeat the child's right of recovery, nevertheless counsel claimed the right to argue that the defendant was not negligent in any of the particulars charged in the complaint, and that the sole and proximate cause of the injury was the negligence of the mother.

Assuming, without deciding, that such an argument, but for the charge, might on the record have been permissible, yet the court, by the charge, forestalled it, by charging that "there is absoutely no evidence of any negligence on the part of the parents in this regard" permitting the child to be on or about the track. For purposes of arguments to the jury, counsel, of course, are required to accept the charge and yield obedience to it, and are not permitted to argue against it. So, when counsel in effect argued that one of the parents was negligent, whether for the purpose of showing that such negligence was the sole and proximate cause or a concurring cause of the injury, he, because of the charge, was not within his rights, though the argument may have been entirely in good faith. We of course recognize a wide scope and great liberality in arguments of causes to a jury. But here the court clearly withheld from the jury all questions of negligence of the parents for any and all purposes. In such case, on timely objections, as here made, to permit arguments, either directly or indirectly, with respect to such questions, tends to mislead the jury. While the court eliminated some of the argument, he ought to have eliminated the whole of it, bearing on the subject, and erred in not doing so. The error may not alone be suffi-

cient to require a reversal of the judgment, but the erroneous ruling had the tendency to do harm, and on the record we cannot say it did not to some extent influence the verdict to plaintiff's prejudice.

Lastly it is contended by the defendant that the plaintiff was not entitled to go to the jury, and that the defendant's motion for a directed verdict ought to have been granted, and thus all of the assigned errors of the plaintiff are harmless and nonprejudicial. There is a complete answer to this. There are no cross-assignments of error, and hence the defendant is in no position to invoke a review of the ruling on its motion.

There are other matters raised as to evidence, but as the judgment must be reversed, and the case remanded for a new trial, it is not probable such matters on a retrial will again arise. Thus no ruling is made as to them.

So, for the reasons hereinbefore stated, the judgment is reversed, and the cause remanded for a new trial. Costs to appellant.

THURMAN, C. J., and CHERRY, GIDEON, and HANSEN, JJ., concur.

### On Petition for Rehearing.

STRAUP, J. A petition for rehearing is filed by the respondent. It, among other things, complains of that portion of the opinion wherein it is stated that the respondent was not in position to invoke a review of the ruling of the court below overruling respondent's motion for a directed verdict, because of no cross-assignment of error. It, in effect, is urged that on an appeal taken by the unsuccessful party, seeking to reverse and set aside a judgment, the respondent, when he himself does not seek to modify or disturb the judgment, but only to defend and uphold it, may, without cross-assignments, point to anything in the record to support the judgment, and especially which shows or tends to show that the errors assigned by the appellant were non-

prejudicial, and in connection therewith and for such pur-pose may point to and have reviewed any ruling made by the court below adverse to him. And in such respect it is particularly urged that, whatever errors may have been committed by the instructions to the jury, such errors were rendered immaterial and of no harmful effect, if on a re-view of the evidence and of the whole record it be found that the trial court erroneously overruled the respondent's motion, for in such case it is urged that the jury, rendering a verdict in favor of the respondent of no cause of action, but did what the court on the motion ought to have done, or was required to do.

As supporting such views the respondent cites and re-lies on the cases from this jurisdiction of *Pool* v. *S. P. Co.*, 20 Utah 210, 58 P. 326; *Azzalia* v. *St. Claire*, 23 Utah 401, 64 P. 1106; *Madsen* v. *Utah Light & R. Co.*, 36 Utah 528, 105 P. 799; *Bowm* v. *Owens*, 37 Utah 177, 106 P. 708; *Schuyler* v. *S. P. Co.*, 37 Utah 581, 109 P. 458; *Progress Spinning & Knitting Mills Co.* v. *So. Nat. Ins. Co.*, 42 Utah 263, 130 P. 63, 45 L. R. A. (N. S.) 122; *Daley* v. *S. L. & U. R. Co.*, 67 Utah 238, 247 P. 293. In such cases it in effect is stated that, where the record in a case is such as to preclude the unsuccessful party from recovering any judgment, or where on the undisputed evidence the appeal-ing party as a matter of law was not, but that the prevail-ing party was, entitled to prevail, errors in a charge are immaterial and harmless; and thus the court affirmed the judgment of the court below, regardless of the assigned errors of the appellant.

However, in such cases not anything is said as to whether there were or were not cross-assignments before the court, nor when cross-assignments are or are not required, or as to what may or may not be reviewed or considered with-out them. Apparently in all such cases there were no cross-assignments of error before the court, nor was there in any of them presented or considered the question of when cross-assignments of error are or when not required, or

what may or may not be reviewed or considered without them. Since in such cases this court, without reference to any cross-assignments of error, on reviewing and considering the whole record, and finding that on the evidence and on the merits of the controversy the unsuccessful and appealing party was not entitled to prevail, and holding erroneous instructions and other assignments of the appellant immaterial and of no harmful effect, and thus affirmed the judgment, it can be urged with much force, as it is, that such has become the established practice of this court in appellate procedure.

Respondent, as supporting its views, also cites 4 C. J. 908, where it is stated that a party cannot assign error which is not prejudicial to him; that where the judgment is clearly correct upon the merits, intervening errors will not operate to reverse the judgment, and, where the unsuccessful party is not entitled to succeed in any event, he cannot complain of any error committed at the trial. Numerous cases are cited by the author from many different jurisdictions in support of the text. Such rule or proposition is there stated without reference to and regardless of any requirement of cross-assignments. However, elsewhere, and as presently will be noticed, the author does consider and discuss the necessity and requisites of cross-assignments.

The respondent also cites the case of *First Nat. Bank of Marshalltown* v. *Wright*, 84 Iowa 728, 48 N. W. 91, 50 N. W. 23, where that court in effect held that an appeal or cross-appeal on behalf of the appellee or defendant in error was not essential to present a review of the question. It also is to be observed that in that jurisdiction, as in many other jurisdictions, cross-assignments apart from a cross-appeal are not required. The case of *Gillean* v. *Witherspoon* (Tex. Civ. App.) 121 S. W. 909, is also cited, wherein that court held that where, on the whole case, the appellee was entitled to a directed verdict, and the trial court failed to give him the benefit of it, he, on an appeal by the unsuc-

cessful party, may complain, and have the matter reviewed without cross-assignment of error. In these as in other jurisdictions, cross-assignments are regarded as relating only to cross-appeals, and hence are not required where a cross-appeal is not required. But, as presently will be noticed, such is not the rule in this and in some other jurisdistions.

The respondent also cites the case of *Pardee* v. *Kuster*, 15 Wyo. 368, 89 P. 572, 91 P. 836, where it was held that the defendant in error, without cross-assignments, may, in the appellate court, challenge the sufficiency of a complaint or petition of the plaintiff in error to state a cause of action or right of recovery. Of course, that is something which, without objection, exception, or assignment, and for the first time, may be challenged in the appellate court, and is what is sometimes called "fundamental error," to consider which neither an exception nor an assignment is requisite, and, as is sometimes said, may sua sponte be noticed as jurisdictional matters are or may be so noticed.

To follow the rule or practice contended for by the respondent leads to the conclusion that cross-assignments by the respondent are in no case required, when he does not seek to modify or disturb the judgment appealed from, but merely to defend and uphold the judgment, and for such purpose may, without cross-assignment, urge a review and consideration of anything in the record which, as claimed by him, obviates or avoids the errors complained of by the appellant, or which renders them nonprejudicial. It must be confessed that the decisions of this court, heretofore referred to and cited by the respondent, lend support to such a contention. And were it not for other cases of this jurisdiction, presently to be noticed, we, because of the decisions referred to by the respondent, would be inclined to uphold its contention, follow such a practice, recall what we in such respect said in our former opinion, and proceed to consider and review the ruling of the court below, overruling the respondent's motion for a directed verdict.

We have no statute on the subject of cross-assignments of error, nor as to when they are or are not required, or as to what may or may not be reviewed and considered without them. The statute (section 6994, Comp. Laws Utah 1917) merely provides that either party to the appeal may assign any errors in findings of fact or conclusions of law, without having first filed a motion for a new trial in the court below. We have a rule of court, rule 26, which provides that the appellant is required to assign errors in writing, and serve and file them in this court within 15 days after the filing of the transcript of the record on appeal. The rule further provides that, "if the respondent desires to assign cross-errors, he shall do so in writing," and serve and file a copy thereof in this court within 5 days after service of the appellant's assignments. It further provides that each alleged error shall be separately stated, and, when the alleged error is upon the ground of insufficiency of the evidence, the particulars wherein the evidence is so insufficient shall be specified, and that the assignments, or so much thereof as relied on, shall be set forth in the printed abstract, together with references to the pages of the transcript and abstract where rulings complained of appear.

It is thus seen that neither the statute nor the rules of this court prescribe when cross-assignments are required, and when not, or what may or what may not be reviewed or considered with or without them. However, this court, in a number of cases, has had occasion to consider the necessity of assignments, as well as cross-assignments and the purpose and function of them. In *Smith Table Co.* v. *Madsen,* 30 Utah 297, 84 P. 885, this court said that the object of assignments of error was to apprise the appellate court of the specific questions presented for its consideration, to inform the opposing party of the points intended to be relied on, and to limit discussion and consideration thereto. Such views are elaborated on and confirmed in *Lyon* v. *Mauss,* 31 Utah 283, 87 P. 1014. True, in such cases the

court had under consideration the purpose and function more particularly of direct assignments, and where they were required to be made, whether in the court below or in this court. What was said in such cases led to the promulgation of rule 26.

However, prior and subsequent thereto this court repeatedly held, as is and was generally held in other jurisdictions, that an error or ruling not assigned, or though assigned, but not discussed, would not be reviewed or considered. And in *Perrin* v. *Union Pac. R. Co.*, 59 Utah 1, 201 P. 405, this court said that is was not "authorized," either by statute or rules of court, to review *any ruling of the court below*, unless error was assigned, designating and specifying the alleged error. As an abstract proposition the statement there made perhaps is too broad, for it is the well-settled doctrine that rulings or questions involving or relating to jurisdiction, and to what is sometimes called fundamental error, errors or defects like those relating to a complaint or other initial pleading, which is so wanting in facts as not to support any kind of judgment or relief, and such as are not waived by failure to object or except, may sua sponte be noticed without objection, exception, or assignment, and even, in some instances, generally applied to homicide or other cases of grave criminal charges but rarely to civil cases, where the ruling, though not assigned or objected to, was so palpably and flagrantly erroneous, and so highly prejudicial, as to show that the trial was manifestly unfair, and the conviction unjust.

The respondent, in effect conceding such views, nevertheless asserts that they apply only to direct assignments, assignments made by the appellant seeking to reverse or set aside the judgment, or when the respondent on a cross-appeal seeks a modification of the judgment, or some other affirmative relief, and in such case well recognizes the general rule that an error or a ruling not assigned, or though assigned, but not discussed, will not be noticed or considered. It, however, contends that

the requirement of cross-assignments does not apply when the respondent but seeks to defend and uphold the judgment. This court, in a number of cases, considering the purpose and function of cross-assignments, has held that cross-assignments cannot avail the respondent to have the record reviewed, to afford him a modification of the judgment or any affirmative relief, and that to review a record for such purpose, and to grant such relief, a cross-appeal is essential, and assignments made thereon in the same manner as on the appeal by the appellant, and that cross-assignments perform the office and function of only defending and upholding the judgment. *Sierra Nevada Mill Co.* v. *Keith-O'Brien Co.*, 48 Utah 12, 156 P. 943; *Fowers* v. *Lawson*, 56 Utah 420, 191 P. 227; *Roberson* v. *Draney*, 54 Utah 525, 182 P. 212; *Big Cottonwood Tanner Ditch Co.* v. *Shurtliff*, 49 Utah 569, 164 P. 856; *Le Vine* v. *Whitehouse*, 37 Utah 260, 109 P. 2, Ann. Cas. 1912C, 407; *Rosenthyne* v. *Mathews-McCulloch Co.*, 51 Utah 38, 168 P. 957; *Larsen* v. *Ryan*, 54 Utah 250, 180 P. 178; *Stookey* v. *Mackay*, 42 Utah 1, 128 P. 580; *Gwilliam* v. *Ogden City*, 49 Utah 555, 164 P. 1022; *Gilbourne* v. *O. S. L. R. Co.*, 39 Utah 80, 114 P. 532.

In such cases this court clearly indicated that cross-assignments can perform the office and function of only to support and uphold the judgment, and in *Le Vine* v. *Whitehouse*, and in other cases, it was expressly held that a question or ruling presented by the respondent is not presented for review without a cross-assignment of error; and such is the logic and the effect of all of the cases of this jurisdiction, where the office or function of cross-assignments of error was considered.

Such, too, is in line with the rule stated in 3 C. J. 1404, where it is said that the general rule is well settled that errors operating against the appellee or defendant in error will not be considered unless assigned, nor though assigned, but not discussed, and that the rules governing direct as-

signments of error in matter of form and requisites apply as well to cross-assignments of error. Cases from many different jurisdictions are cited in support thereof. It, however, is there also stated that the rule is not of universal application, and that it has been held in some jurisdictions that the rule does not apply where the appellee is entitled to a judgment on the face of the record, or where he has shown himself on the whole case to be entitled to an instructed verdict, which was denied him. The cases cited in support of that are the cases cited by the respondent from Iowa, Texas, and Wyoming, and cases from West Virginia, Mississippi, and Louisiana. The author, however, does not lay that down as being the general rule or as being the weight of authority. He merely states that the general rule requiring cross-assignments was not the universal rule.

An examination of the cases and authorities shows that diverse views have been expressed by the courts on the subject, and which are not always harmonious even in the same jurisdiction. Such divergent views in a large measure may be attributable to different statutes or rules of court on the subject. In 3 C. J. 1403, it also is stated that in some jurisdictions assignments of error by the appellee cannot be considered, unless an appeal has been taken or a writ of error sued out by him; but in other jurisdictions errors may be assigned by the appellee or defendant in error, without taking an appeal, or suing out a writ of error. The latter is the holding of this court, when the respondent but seeks to defend and uphold the judgment. The author further says that cross-errors can be assigned or predicated only upon questions presented in the lower court, or rulings of the latter which arise out of or are connected with the judgment on which the appellant bases his appeal. It also is to be observed that in some of the cases and in some of the authorities, when speaking of or considering cross-assignments, assignments on a cross-appeal are meant. But that is not, as has been seen, the manner in which this court has characterized cross-

assignments, nor as many other courts have characterized them.

Lastly, the respondent urges that, because of our statute (section 6622, Comp. Laws Utah 1917) providing that a judgment shall not be reversed for errors or defects which do not affect the substantial rights of the par- ■ ties, and since the burden is on the appellant, not only to show error, but also prejudice affecting some substantial right, he ought not to be permitted to open only such portion of the record as he chooses and close the balance of it to the respondent. Certainly not. The burden, of course, is on the appellant to show, not only error, but prejudicial effect as well. But how may he show that? It often has been broadly stated that all errors are presumed to be prejudicial. We think the better rule is that not all committed errors in the trial of a case are presumptively or prima facie prejudicial, for some committed errors are merely abstract, or on their face immaterial, or otherwise are not in and of theselves calculated to do harm. Still the party against whom the error was committed may show by the record that it resulted to his prejudice in some substantial right.

However, where the committed error is of such nature or character as calculated to do harm, or on its face as having the natural tendency to do so, prejudice will be presumed, until by the record it is affirmatively shown that the error was not or could not have been of harmful effect. Thus, if the appellant shows committed error of such nature or character, he, in the first instance, has made a prima facie showing of prejudice. The burden, or rather the duty of going forward, is then cast on the respondent to show by the record that the committed error was not, or could not have been, of harmful effect. *State* v. *Cluff*, 48 Utah 102, 158 P. 701; *Jackson, Stone, et al.* v. *Feather River & Gibsonville Water Co.*, 14 Cal. 19; *Thelin* v. *Stewart*, 100 Cal. 372, 34 861; 2 Hayne, New Trial and Appeal (2d Ed.) pp. 1608-1614.

The appellant, having here shown committed error against him in misdirecting the jury as to the law applicable to one or more of the material issues of the case, made a prima facie case of prejudice which cast the burdent on the respondent to affirmatively show that the committed error was not or could not have been of prejudicial effect. In thus attempting to make such an affirmative showing, the respondent invites the attention of the court to the adverse ruling made against it, overruling its motion for a directed verdict, and, without cross-assignments, or specifications of particulars wherein it is claimed the evidence is insufficient to justify a submission of the case to the jury, invokes and urges a review of the ruling overruling its motion on that ground. Were the respondent in position to invoke a review of the ruling, and if, on a review of the record purporting to contain all of the evidence and all of the proceedings had at the trial, it should be determined that the evidence was not sufficient to warrant a submission of the case to the jury or to support a verdict in favor of the appellant, or if on such review it otherwise was conclusively made to appear that the appellant in no event was entitled to prevail in the cause, then, of course, whatever presumption of prejudice might be indulged on the alleged errors in misdirecting the jury would be overcome, and thereupon the judgment, as to such assignments, should be affirmed.

But at the threshold of the proposition is the question of whether the respondent, without a cross-assignment or specification of particulars, was entitled as matter of right to invoke a review of the ruling. If the respondent, without cross-assignment or specification of particulars, is entitled to invoke such a review, then does it follow that this court, without assignments, without a specification of particulars, and even without a motion of nonsuit or for a directed verdict, and without any request in the court below that the case be withheld from the jury, is, sua sponte or on the mere suggestion or argument of the respondent, in every case

required to look into and review the whole record, and if in doing so a conclusion is reached that the appellant was not entitled to a verdict or judgment in his favor, to then affirm the judgment, regardless of the assigned errors of the appellant. Such a practice but requires this court to first review and consider the evidence and the merits of the case before considering the presented assignments.

Though it be assumed that this court, without assignments or specifications, either at the request, on mere argument, of the respondent, or on he court's own motion, may, in its discretion, review and consider the evidence and the whole record on merits for the purpose urged, still the question is, when the respondent has made neither assignments of error nor specifications of particulars, is the court required to do so, is the respondent, in such case, in position to invoke and require such a review as matter of right? The reasons requiring direct assignments to apprise the court and the opposing party of what matters are presented for review *and to limit discussion and consideration thereto*, are, if not entirely, at least to a large extent, applicable to cross-assignments or questions raising or involving insufficiency of the evidence. We think it, as a general rule, is the better practice to confine the review and consideration of the record to what is presented for review, and not undertake to review matters and questions not so presented, except those relating to or involving jurisdiction or fundamental error. The review of the ruling sought to be invoked does not involve nor relate to jurisdiction or fundamental error. 3 C. J. 1342.

It is readily perceived that in many instances, to show nonprejudicial effect of the assigned or alleged errors of the appellant, the record may be pointed to and considered without cross-assignments, and in some, where on the record there were no adverse rulings which could be assigned as error. We need not now consider that, nor undertake to lay down a rule with respect thereto covering all cases. What we now decide is with respect to the particular question

before us, that of a review of the evidence to ascertain and determine its sufficiency to have entitled the appellant to go to the jury, which involves a review of the ruling overruling respondent's motion for a directed verdict. When the appellant served and filed his direct assignments of error, if the respondent, to avoid or obviate the effect of them, desired a review of the adverse ruling on its motion, we think no hardship was imposed on it to make a cross-assignment and specification of particulars wherein it claimed the evidence was insufficient, and thus apprise the court and the opposing party of the specific matters so sought to be reviewed and considered. Had the verdict been against the respondent and a judgment entered thereon, and had the respondent appealed, it could not, as matter of right have invoked a review of the ruling overruling its motion for a directed verdict without an assignment of error and a specification of particulars. True, that would be an appeal by the appellant on which it would not be entitled to have considered anything not presented by direct assignment; still, in principle, we think there is no substantial difference as to the requirement of an assignment and specification when a counter attack is made on the evidence on the ground of insufficiency.

We think a party may not, as a matter right, be heard in this court on the question of insufficiency of the evidence, when he had not in some manner presented such question to the court below and invoked a ruling on it, except in cases tried to the court, where findings and conclusions are, by statute, deemed excepted to, and where either party may assign errors with respect thereto and without a motion for a new trial. To hold otherwise would mean that, in a case tried to a court and a jury, error could be imputed to the trial court without having given him an opportunity to rule on it. In such particular the respondent here fully protected its rights by its motion for a directed verdict, and thereby properly presented the question to the trial court and properly invoked a ruling on it. Such was the first

step requisite—in some manner to present the question to the trial court and invoke a ruling on it—to entitle the respondent as matter of right to be heard in this court on the question. But that was not enough. It also was required to make a cross-assignment and specification of particulars, though only for the purpose of obviating or avoiding the alleged assignments of the appellant and to support and uphold the judgment. That is what this court held was the office and function of cross-assignments.

Thus, whatever this court, on its own motion or in its discretion, without cross-assignment and specification, may be authorized to review or consider, or could have reviewed and considered, with respect to the ruling of the court below on the question of sufficiency of evidence, still we adhere to the ruling in the original opinion that the respondent, because of no cross-assignment and of no specification of particulars, was not in position, as a matter of right, to invoke a review of the ruling of the court below. No other conclusion may well be reached without creating an irreconcilable conflict in the decisions of this jurisdiction. In reaching such conclusion we do not overrule any of the prior decisions of this court on the subject. Nor do we lay down a rule that this court, without cross-assignment, is not authorized in any case to regard, or may not regard, assigned errors of the appellant nonprejudicial, when on the record it is manifest that the appellant in no event, as matter of law, was entitled to recover. Nor do we say that, in considering and determining the question of prejudicial or nonprejudicial effect of found error, we are not authorized to look, or that we may not or will not look, into or consider the whole record before us.

What we say and what we decide is that as a general rule we will not review or examine a record of a trial of a case before a jury as to a question of sufficiency of the evidence to support the verdict, or to entitle the unsucessful and appealing party to a verdict, unless the matter is presented as indicated, and so that the record in such par-

ticular may be examined and considered with a purpose and with the specified particulars in mind. Without assignments and specifications, we, on our own motion, or at the mere instance or suggestion of one of the parties—on mere argument—ought not to be required to examine and review a record to ascertain what defects or insufficiency in the evidence may be found or discovered by us. Still we do not say that we may not, or that we will not, without assignments or specifications, notice and consider palpable defects in such particulars, when on the record they are clearly apparent. However, as a general rule, if the question of insufficiency of the evidence is not properly presented as indicated, a party invoking a review of it may not complain if we do not review or consider it. In all events, so far as this case is concerned, upon the statement of facts in the opinion heretofore filed it is quite apparent that on the evidence adduced in the cause the overruling of the motion to direct a verdict was justified.

Other matters presented relate to the instructions already considered by us. We have also further considered these. We are satisfied with the disposition made of them.

The petition for rehearing is therefore denied.

THURMAN, C. J., and CHERRY, GIDEON, and HANSEN, JJ. concur.