# Richmond

## G. W. Spicer v. Hartford Fire Insurance Company, Hartford, Conn., Inc.

November 21, 1938.

Record No. 1976.

Present, All the Justices.

The opinion states the case.

*Robert E. Scott, Burnett Miller, Sr.,* and *E. E. Johnson,* for the plaintiff in error.

*Alexander H. Sands* and *Alexander H. Sands, Jr.,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

George W. Spicer instituted this action against the Hartford Fire Insurance Company, of Hartford, Conn., to recover, on an insurance policy, for the loss of a dwelling and personal property destroyed by fire. The jury re-

turned a verdict for plaintiff, which the trial court set aside, and entered judgment for defendant. To that judgment plaintiff obtained this writ of error.

The insurance contract in question was issued on July 29, 1935, to extend for five years, in consideration of $31.12, paid in cash, and a note signed by plaintiff for $124.48, payable in four annual installments. The amount of the policy totaled $5,300; $2,400 of which was on the residence, $600 on the personal property, and $2,300 on outbuildings. In 1914 plaintiff acquired the 150 acres of farm land in Culpeper county, on which the property insured was located, and for fifteen years or more he kept this property insured with defendant.

On May 29, 1936, the residence and its contents were destroyed by fire. The agent, R. E. Fifield, was notified, and a few days thereafter, he, and one J. R. Loyd, an adjuster for the Fire Companies Adjustment Bureau, visited the scene. The adjuster and plaintiff agreed on the value of the building and personal property destroyed. This agreement was reduced to writing, and it shows that the agreed value of the residence was $2,902.46, and the agreed value of the personal property was $740.70. At this conference, which lasted for several hours, nothing was said by either party about the ownership of the property or other insurance thereon. Fifield told plaintiff he would receive a check for three-fourths of the amount of the loss within a few days. Due to other information later received, the company declined to make settlement.

The policy contains the usual conditions and restrictions required by section 4305a of the Code, and is in the form "known and designated as the 'standard fire insurance policy of the State of Virginia.'" The pertinent provisions of the policy are:

"This entire policy shall be void, unless otherwise provided by agreement in writing added hereto, (a) if the interest of the insured be other than unconditional and sole ownership; or (b) if the subject of insurance be a building on ground not owned by the insured in fee simple; or (c)

if, with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property insured hereunder by reason of any mortgage or trust deed.

"Unless otherwise provided by agreement in writing added hereto this Company shall not be liable for loss or damage occurring (a) while the insured shall have any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

Plaintiff contends that these conditions and restrictions in the policy are void because they are not printed in type as large as brevier, or eight-point, as required by Code, sections 4227 and 4227a. One witness for plaintiff stated that, in his opinion, the size of type used was less than eight-point. Two witnesses for defendant stated that by actual measurement the type was eight-point.

██ When the evidence is conflicting on an issue of fact, the finding of a jury is binding upon a court; but, when the question at issue involves the simple application of a universally accepted standard to determine the result, it is the duty of the court to disregard the finding of a jury when its finding is to the contrary. An inch is the American standard of linear measure. A line extending twelve inches is a foot. No testimony denying this accepted fact is permissible to support a verdict contrary to that standard of measurement. A like standard, while it may not be so generally known, is now used in ascertaining the size of type. The new Webster's International Dictionary is recognized as a standard to ascertain the etymology, pronunciation and definition of words. This authority states that the point system of measuring type is "a system according to which the various sizes of type bodies, leads, etc., bear a fixed and simple relation to one another." It was adopted in 1886 by the United States Type Founders' Association, although prior to that time many founders were using it. "It is a modification of a French system, and is based upon the pica body then most used. This body is divided into twelfths called 'points,' and every type body

consists of a given number of these points * * * . The value of the point is .013837 inch, or nearly 1/72 inch."

The difference between the size of seven-point type (the size plaintiff claims the type in question is) and eight-point type, is 1/72 of an inch. This variation in size is difficult, if not impossible, to detect with the naked eye. The original policy, with the printed conditions and restrictions, is a part of the record before this court. The question of fact is whether the letters measure 8/72 of an inch from top to bottom. Applying the standard rule of measuring type to the print, the result is conclusive that the size of the type is eight-point, or brevier, the minimum size type that conditions and restrictions in a fire insurance policy are authorized by statute to be printed.

The evidence discloses this situation: Title to the 150 acres of land was in the name of George W. Spicer and M. F. Spicer, his wife. Prior to July, 1935, plaintiff, unknown to defendant, had purchased through Fred Hudgins, an agent for the Continental Insurance Company of New York, $1,700 insurance on the same building and $500 insurance on the same personal property, in the name of himself and wife, with a standard mortgage clause attached to the policy for the benefit of the mortgagee, the Federal Land Bank of Baltimore. On July 27, 1935, R. E. Fifield, agent for defendant, called by plaintiff's home to obtain a renewal, or a new application for another policy, on the same property. Plaintiff stated to defendant's agent that he desired to renew or reinsure the property. The question arose as to the insurable value. The agent stated that $2,400 was too much for the building unless the porch was repaired and the house painted. The agent, with the understanding that the porch would be rebuilt, requested plaintiff to sign a blank application and stated that he would write the information desired on the application after he returned to his office. Plaintiff testified that the only question asked him by the agent was to whom to make the policy payable, and that he replied, "you make it payable to me and my wife, the same as Mr. Hudgins." At that time plaintiff

was indebted to the Federal Land Bank of Baltimore, on one loan, in the sum of $2,510.38, and had paid no interest thereon since December 1, 1931. He owed the same creditor approximately $500 on a smaller loan, on which no interest had been paid since January 24, 1933. Both of these debts were secured by mortgages on the premises.

In the blank application the limitation of the agent's authority is expressed in these words: "The foregoing is my own agreement and statement, and is a correct description of the property on which indemnity is asked, and I hereby agree that insurance shall be predicated on such statement, agreement, and description, if this Application is approved, and that the foregoing shall be deemed and taken to be promissory warranties running during entire life of said policy. * * * This company shall not be bound by any act done or statement made by or to any agent or other person which is not contained in this, my Application."

The application contains the following questions in print, and the answers filled in by the agent:

"1. Are you the sole and absolute owner of the property proposed to be insured?" "Yes."

"2. Is the title to land on which buildings are situated in your name." "Yes."

"3. Is any of your property, real or personal, under mortgage, lien or incumbrance? If so, state how, to what amount, and when due." "Yes—Federal Land Bank of Baltimore—800."

Plaintiff contends that defendant is estopped to deny the falsities of the statement in the application and the breach of conditions stated in the policy. This contention is based on plaintiff's testimony that he told the agent to make the policy "payable to me and my wife, the same as Mr. Hudgins," which he claims imputed knowledge to the defendant of the fact that he did not own the land upon which the building stood in fee, and that there was additional insurance on the property.

In support of this contention, plaintiff relies upon the following Virginia cases: *Sands* v. *Bankers' Fire Ins. Co.,* 168 Va. 645, 192 S. E. 617; *Mutual Benefit Health & Accident Ass'n* v. *Alley,* 167 Va. 144, 187 S. E. 456; *Universal Ins. Co.* v. *Mouel,* 165 Va. 651, 183 S. E. 230; *Mutual Benefit Health & Accident Ass'n* v. *Ratcliffe,* 163 Va. 325, 175 S. E. 870; *Harrison* v. *Provident Relief Ass'n,* 141 Va. 659, 126 S. E. 696, 40 A. L. R. 616; *North River Ins. Co.* v. *Lewis,* 137 Va. 322, 327, 119 S. E. 43, 45. In each of these cases, except *Mutual Benefit Health & Accident Ass'n* v. *Alley* and *Mutual Benefit Health & Accident Ass'n* v. *Ratcliffe,* the company was held to be estopped from claiming a breach of condition on the ground that there had been no misrepresentation by the insured, but due to carelessness, or some other reason, the agent of the company had failed to impart to his principal the information disclosed by the insured, or the agent had failed to seek information known by him to have been material to the risk. The distinction between a general agent and an agent with limited authority was not mentioned in any of these cases except *North River Ins. Co.* v. *Lewis,* nor does it appear from any of the opinions that this limited authority of the agent was expressly stated in the application as it is in the case now under consideration.

In *Virginia Fire & Marine Ins. Co.* v. *Richmond Mica Co.,* 102 Va. 429, 46 S. E. 463, 102 Am. St. Rep. 846, a brief review of the former Virginia decisions on the question was made, and the established doctrine of this court was stated to be "that an insurance company will not be heard to say that an agent of their own selection has exceeded his powers, and has not communicated to them facts made known to him by the assured, is subject to the qualification, *unless it can be shown that special limitations upon the powers of the agent are known to the assured, or plainly appear from the nature of the agent's employment.*" [Page 466.]

In *Royal Ins. Co.* v. *Poole,* 148 Va. 363, 138 S. E. 487, this is said: "It will thus be seen that the distinguishing features of the class of cases we are dealing with are that the authority of the agent is limited, that the insured has

notice of this limitation of power (and signing an application for insurance containing the limitation is regarded as such notice whether applicant reads the notice or not), and the insurer has no notice of the falsity of the answers. * * * In the class of cases relied on, the company is affected with notice of all the general agent has knowledge of with respect to the policy, and a waiver of conditions or provisions follows. They do not, nor do any other Virginia cases to which we have been referred, hold that an agent, whose powers are limited and the assured has notice of those limitations, may waive conditions in an insurance policy."

■■ Since the date of the foregoing opinion, the General Assembly, as heretofore stated, has adopted a form of policy "known and designated as the 'standard fire insurance policy of the State of Virginia,'" (Va. Code, sec. 4305a), which requires all insurance companies, doing business in this State, to include in their policies the conditions and restrictions now under consideration. In *North River Ins. Co.* v. *Belcher,* 155 Va. 588, 155 S. E. 699, we said: "The purpose of the General Assembly in passing the act of 1928 prescribing a standard policy, and requiring its use, was to assure in all cases a fair and equitable contract of insurance between the parties, and not to cut off estoppels designed to prevent fraud or imposition, which had theretofore been enforced by the courts in cases in which the policy in question contained the same provisions as those which are contained in the standard policy prescribed by the act.

 * * * * * * *

"These provisions in a policy with reference to the interest and title of the insured, are valid under the common law, and by virtue of the standard policy act of 1928 (Acts 1928, chapter 256, pages 763-766), are now by statute not only permitted, but required to be included in every Virginia fire insurance policy; and the insured accepting a policy in which they are included is bound thereby, unless the insurer by a binding waiver or by virtue of an estoppel

is precluded from relying thereon, or upon the specific breach thereof."

 The decision in *Royal Ins. Co.* v. *Poole, supra,* has not been overruled, but has been cited with approval in the following cases: *Mutual Benefit Health & Accident Ass'n* v. *Ratcliffe,* 163 Va. 325, 175 S. E. 870; *Provident Relief Ass'n* v. *Butts,* 158 Va. 259, 163 S. E. 66; *Maryland Casualty Co.* v. *Cole,* 156 Va. 707, 158 S. E. 873; *North River Ins. Co.* v. *Belcher,* 155 Va. 588, 155 S. E. 699; *Puryear* v. *Home Ins. Co.,* 152 Va. 216, 146 S. E. 251; *Flannagan* v. *Northwestern Mut. Life Ins. Co.,* 152 Va. 38, 146 S. E. 353. Inasmuch as the facts in the case at bar are not distinguishable from the facts in that case, the doctrine of *stare decisis* applies, and is controlling. Even if we felt inclined to overrule the line of decisions followed in *Royal Ins. Co.* v. *Poole* on this question, and to hold that notice of an insurance agent's limited authority, expressed in a blank application signed by the applicant, is not sufficient to impute notice of the limited authority to the applicant, the final conclusion in this case would not be different.

 One of the standard conditions in the policy is that the policy shall be void if, with knowledge of the insured, foreclosure proceedings be commenced. Judge Prentis, speaking of this, or a similar provision, in *Bawden* v. *American Central Ins. Co.,* 153 Va. 416, 150 S. E. 257, said: "This court has gone as far as any court in enforcing insurance policies in favor of the assured, and resolving all fair doubts in favor of the assured in such cases, but this proper rule cannot be so extended as to disregard valid provisions of the contract. This provision is valid, it is wise in purpose, clear in meaning; it is in the interest of the public; it expresses and constitutes the contract."

 It is conceded that three days before the fire plaintiff and his wife were served with process, returnable to first June Rules, requiring them to answer a bill in chancery filed by the Federal Land Bank of Baltimore. Plaintiff contends that he did not know that this service of process upon him was the beginning of foreclosure proceedings. The

facts are that he knew he had two mortgages on his place held by the Federal Land Bank of Baltimore; that he had not paid interest on the larger loan since December 1, 1931; that on June 14, 1935, he received the following letter from an agent of the Federal Land Bank of Baltimore: "Your National Farm Loan Association has submitted to us a resolution requesting this Bank to take necessary legal steps to protect its interest with respect to your mortgage. We would dislike very much to do this, and truly hope you will make some arrangement to put your loan in good standing, and thereby prevent any such action on your part.

"Under the circumstances, we will mark your case up ten days, with the hope that satisfactory arrangements can be made to settle your delinquency, otherwise we will assume that any action taken by us to force collection will not embarrass you." He was told by the local agent for the National Farm Loan Association that they could not carry him any further; that his claim had been placed with an attorney for collection, and that, unless settlement was made, foreclosure proceedings would, be instituted. Plaintiff made no settlement, and received no assurance from his creditor that time would be extended. Under the circumstances, a disclaimer of knowledge of the fact that foreclosure proceedings had been commenced can not be accepted.

For the reasons stated, we are constrained to affirm the judgment of the trial court.

*Affirmed.*