NEW HAMPSHIRE FIRE INS. CO. OF MAN-
CHESTER v. BOLER ET AL.
CONTINENTAL INS. CO. OF CITY OF NEW
YORK v. SAME

(Nos. 2138, 2139; May 6, 1940; 102 Pac. (2d) 39)

For plaintiffs in error, there was a brief and oral argument by *R. R. Rose* of Casper.

For the defendants in error, there was a brief and oral argument by *Fred W. Layman* and *Edward E. Murane* of Casper.

RINER, Chief Justice.

Proceedings in error brought the record in these cases here to review judgments of the district court of Natrona County. The actions were instituted in that court by Thomas Boler and A. E. Schmitt, as plaintiffs, to recover for a fire loss under two policies of fire insurance, both issued relative to the same personal property. The New Hampshire Fire Insurance Company of Manchester, a corporation, having issued one policy, it was named as defendant in the action brought thereon and The Continental Insurance Company of the City of New York, a corporation, having issued the other policy, it was named as the defendant in the action based upon it.

The pleadings in both cases are substantially the same, except as to the names of the corporate defendants, the amount of insurance involved and the amount of premiums paid. Both policies were issued for one year periods to Thomas Boler as the insured, the other plaintiff, Schmitt, being not named therein. These policies covered only the contents of a building located in the Town of Evansville, Wyoming, and had nothing to do with the insurance of the building, as it was owned by other persons.

The amended petitions alleged the issuance of the policies to Boler, as described above, on or about January 8, 1937, the payments of the premiums, the destruction of the insured property due to fire occurring on or about August 23, 1937, and the submission of proofs of loss by plaintiffs to the defendants, demand upon and refusal by said defendants to pay the loss claimed. By court order the several policies of insurance were attached to and incorporated in the respective amended petitions. Plaintiffs' initial pleadings each alleged also

"that at the time said insurance policy was issued said A. E. Schmitt was a silent partner and joint owner of the property thereby insured and said defendant was so informed at the time said policy of insurance was applied for by said plaintiffs."

The answers of the defendants in substance admit the issuance of the policies as aforesaid and payments of premiums; that Schmitt was a partner in the business conducted at the location described in said policies, and that he owned jointly with Boler certain property in the building at the time of issuance of the policies and when the fire occurred; that a small part of the personal property described in the amended petitions was owned by plaintiffs and that some of this property was not owned by either of them. The answers also allege a "Three-fourths Value Clause" attached as riders to the policies, limiting the loss payable under the several policies to "three-fourths of the actual cash value of the property covered," and pleaded the existence of concurrent insurance; they admit that proofs of loss were made, and deny all other allegations of the amended petitions.

The second defense in the answers allege that the property described in the policies was at the time of the fire, and for some time prior thereto, used for an illegal purpose, to-wit, gambling. The third defense in said answers averred that whatever liquors were in the place when the fire occurred were not purchased from the Wyoming Liquor Commission, such purchases being made in violation of law, and that the liquor thus obtained was not covered by the policies. The fourth defense asserted false swearing on the part of the plaintiffs in the proofs of loss, details as to this contention being given.

The plaintiffs' replies were denials of the new matter set out in these answers. The causes were tried in the district court without juries and by stipulation of the

parties the actions were consolidated for trial. The district court entered its several judgments therein in favor of the plaintiffs and against each defendant.

For this court but one transcript was prepared and one bill of exceptions submitted. Both causes were argued and submitted together here, and one opinion will suffice at this time to dispose of each of them.

It is contended on behalf of the insurance companies that there was a violation of the "unconditional and sole ownership" clauses contained in the policies involved, they being issued to Thomas Boler only, when as a matter of fact A. E. Schmitt was a partner in the business and was a part owner of the property undertaken to be covered by said insurance, both at the time said insurance was solicited and subsequently until and including the time of the fire. Relative to that matter each policy of insurance contained the following provisions:

"This entire policy shall be void, unless otherwise provided by agreement in writing added hereto, (a) if the interest of the insured be other than unconditional and sole ownership. * * * * * *

"No one shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement added hereto, nor shall any such provision or condition be held to be waived unless such waiver shall be in writing added hereto, nor shall any provision or condition of this policy or any forfeiture be held to be waived by any requirement, act or proceeding on the part of this Company relating to appraisal or to any examination herein provided for; nor shall any privilege or permission affecting the insurance hereunder exist or be claimed by the insurance unless granted herein or by rider added hereto."

The position of the defendants in error in this matter is that these requirements of the contracts between the parties were waived by the insurers through the knowledge obtained by the person who solicited the

insurance evidenced by said instruments and through the issuance thereof by the respective insurers thereafter.

The essential facts so far as disclosed by the record before us which deal with this matter appear to be set forth in portions of the testimony of the plaintiffs Boler and Schmitt and the testimony of one James H. Coady, the individual who solicited the insurance.

On direct examination Boler, as a witness in his own behalf, stated that he had a half interest in the Oasis Night Club in Evansville, Wyoming, located about two miles east from Casper; that he purchased fire insurance on the personal property of the Oasis Night Club from Jim Coady; that the first talk about it was at the old Silver Dollar Saloon; that thereafter at the Oasis Schmitt, Coady and Boler discussed the proposed purchase of this insurance and the ownership of the Oasis, and an order for the insurance was at that time given; that it was then discussed that Schmitt was a partner. When asked to tell what the conversation with Coady regarding the ownership of the property was, Boler responded, "Well at that time Mr. Schmitt had an interest in the Silver Dollar and naturally I didn't want—". At this point the trial judge interrupted the witness to call his attention to the nature of the question propounded. Thereafter counsel for plaintiffs immediately asked another question dealing with another matter, and the witness' statement of the conversation thus had with Coady was not completed or at any time given by Boler.

Coady's testimony on direct examination is substantially this: That he sold insurance for both The Continental Insurance Company of the City of New York and New Hampshire Fire Insurance Company of Manchester; that he solicited fire insurance from the Oasis Night Club; that he conversed the first time with Boler and also discussed the matter with Schmitt; that in the

conversation with these men "they would always refer —one of them would state that Gene, or if it was Mr. Schmitt I was talking to, he would refer to Tom, his partner"; that he (Coady) knew before the insurance was written that Mr. Schmitt was a partner in the business, and that Gene Schmitt paid him the premiums.

On cross-examination this witness stated that at the time these policies were issued he was working for and employed by the Marion P. Wheeler Agency; that he (Coady) never signed any policies for either of the defendants; that all he ever did was to solicit orders for fire insurance companies, turn the orders in to the Marion P. Wheeler Agency, and perhaps receive the policy, deliver it and collect the premium, and turn that in to said Agency; that he received his commission from the Agency aforesaid and not from the defendants or any other company represented by such Agency; that he was told to issue the policies in suit in the name of Thomas Boler; that he reported the order as thus given to said Agency; and that the insurance policies were then issued just the way Schmitt and Boler told him to have them issued; that he delivered the policies about three weeks later to the Oasis. On redirect examination his testimony was: that he never held any office or any interest in the Wheeler Agency, a corporation; that he never related the conversation or the substance of the conversation with Mr. Schmitt and Mr. Boler to the Wheeler Agency; that the premiums were paid to Coady; that he held a license at that time to solicit insurance. On recross examination he further stated that this license authorized him to solicit insurance for an agency.

A. E. Schmitt, one of the plaintiffs, testified by deposition, which was offered in evidence by the plaintiffs after the defendants had rested their case, was objected to by them solely on the ground that it was not proper

rebuttal testimony, and the objection was sustained. No request was made of the court to reopen the cause and allow the introduction of this testimony. For reasons which will presently appear, we consider that we must look at and examine certain portions thereof material to the issues in the several causes notwithstanding the ruling made in the district court.

In the course of that deposition Schmitt stated: that on the 23rd day of August, 1937, he was half owner in a cabaret business in Evansville, Wyoming; that Thomas Boler was the other partner; that James H. Coady was the agent through whom the insurance on the property used in conducting the business was procured; that prior to the issuance of the fire insurance policies on this property Coady was advised as to the partnership existing between Schmitt and Boler; that Coady first solicited Boler and Schmitt in the bar of the place of business called the "Oasis," and conversations occurred between Coady and Schmitt and Boler for about a month before he was told to write the insurance; that only Coady, Boler and Schmitt were present at the time Coady was authorized to write the insurance; that Schmitt told Coady then that Boler and Schmitt were partners; that Boler had the liquor license in his name; that "we did this because of the fact that I had at that time another saloon and the licenses were issued there in my name and that for the fact of convenience and getting the license Mr. Boler was named as the owner in the license"; that Coady then said "it was all right, that he understood the situation and that everything would be all right"; that Coady was fully advised as to the nature of the business conducted by these parties and the use to which the property was put and knew all about it; that Boler and Schmitt were jointly the owners of the personal property aforesaid; that they leased the premises in which the business was conducted; that Schmitt's and Boler's names did

not appear in that lease; that "we had the lease made to Mr. Boler for the reason that we procured the liquor license in his name as stated before"; that Coady was advised of all these facts; that "we went into all this and explained to him all about our partnership and told him why Mr. Boler appeared as owner, and he told Mr. Boler and myself at that time that it was all right, that he would fix everything, and that the insurance would be carried in Mr. Boler's name like the lease and liquor license appeared and he did this knowing that Mr. Boler and myself were jointly partners in the business"; that he (Schmitt) had two slot machines that he brought from the Silver Dollar, a saloon he had.

Section 4 of Chapter 87 Laws of Wyoming, 1935, Page 110, regulating the traffic in spirituous and malt liquors, after prescribing in detail what an application for a liquor license shall contain, among the requirements being a full statement under oath of a number of prescribed qualifications which the applicant should have, contains this provision: "Where the application is made by a partnership, each member thereof shall sign and verify the separate elements of the same." Then, among other provisions in Section 3 of the same Chapter is the following: "No city, town or county shall issue more than one retail license to any one person." Violations of these provisions of the statutes invoke prescribed penalties. See Section 36 of the Chapter 87 cited above.

Relative to the provisions contained in the insurance policies aforesaid and quoted above, the authorities are reasonably clear that ordinarily stipulations in such instruments that the policies shall be void if the interest of the insured be other than unconditional and sole ownership, are reasonable and valid and that a breach of such stipulations affords a complete defense to actions on the policies. 27 C. J. 170-171 and cases cited in notes; 14 R. C. L. 1052, Sections 229-230; 4 Couch

Cyclopedia of Insurance Law 3178, Section 915; North Carolina Home Insurance Co. v. Nissen, 181 Okla. 197, 72 P. (2d) 812; Boston Insurance Co. v. Hudson, 11 Fed. (2d) (C. C. A. Ninth Cir.) 961; Pollock v. Connecticut Fire Insurance Co. of Hartford, 362 Ill. 313, 199 N. E. 816. Defendants in error concede that this is the rule for they say in their brief "ordinarily this conclusion is correct." However, they insist that such provisions can be waived (26 C. J. 281) and that under the facts submitted here there was such a waiver.

In this connection the cases of Northwestern National Insurance Co. v. McFarlane, 50 Fed. (2d) 539, and Lumber Underwriters v. Rife, 237 U. S. 605, 35 Sup. Ct. Rep. 717, 59 L. Ed. 1140, are indicative of the different views entertained by appellate courts relative to the binding effect of fire insurance policy contract requirements of the nature quoted above, and whether they may be waived.

To this contention of waiver the insurers reply that:

"A mere soliciting agent, that is, one employed by the insurer only to secure customers for its insurance, and directed to forward applications, to deliver policies when approved by the insurer, and to remit premiums, has not the power to waive the conditions of the policy." (26 C. J. 289 and cases cited.)

See also 2 Couch Cyclopedia of Insurance Law 1605, where it is said:

"But, as a general rule, mere local or soliciting agents, who have no general powers, cannot effect a waiver which will bind their principals. Thus, an agent, who is only authorized to solicit and take applications for insurance, receive the premiums, and deliver the policies after they have been signed by the proper officers, has no authority, express or implied, to waive conditions or forfeitures arising from breaches of policy conditions."

The insurers point to the testimony of Coady, which we have above abstracted, and say that he was merely

a soliciting agent of this character. And, indeed, such he would seem to be. The defendants in error in avoidance of this position rely on 26 C. J. 296-298, where, on the authority of many decisions, the following rule is announced:

"If an officer or agent of the insurer, during the course of his employment prior to or contemporaneously with the completion of the contract, acquires any information affecting the risk or becomes cognizant of any breach of a condition precedent or of false or conflicting statements by the insured, his knowledge is imputable to the insurer. This is true even though he does not in fact communicate his knowledge to the insurer or gives it erroneous information. The rule is applicable not only where the agent is a general one but also where he is one possessing limited powers only, such as a soliciting agent."

An examination of the authorities referred to in the several excerpts last above given would indicate a more or less confused state of the law and that courts have not always been careful to make a distinction between mere soliciting agents, such as Coady appears to have been, and agents possessed of power to sign and issue policies as well as solicit insurance, if such a distinction should be made. In the case at bar Coady testified, as hereinabove indicated, that he did not transmit to the Marion P. Wheeler Agency, the local general agent with power to issue policies for the defendant companies, the information given him concerning the state of the ownership in the property insured. It is, of course, plain, therefore, that the insurers had no actual knowledge that Schmitt had any interest in the property whatsoever. The rule that the knowledge of an agent of limited authority "such as a soliciting agent," as announced in the excerpt last above given, must be imputed to the insurers is therefore the peg on which must rest any waiver in this case of the policy provisions already described. This rule, if it is and should

be regarded as controlling, is not without dispute by extremely respectable authority, as we have already indicated. See also Travelers Fire Insurance Co. v. Price, 169 Miss. 531, 152 So. 889; Indemnity Co. of America v. Bollas, 223 Ala. 239, 135 So. 174; Wagner v. Great American Insurance Co., 221 App. Div. 144, 223 N. Y. Supp. 155, appeal dismissed in 251 N. Y. 536, 168 N. E. 418; Rozgis v. Missouri State Life Insurance Co., 271 Ill. App. 155.

We shall here assume, but not decide, that the knowledge of a mere soliciting agent employed and paid by an agent who is authorized to write and issue policies of fire insurance is imputable to the insurer company. Upon that assumption what knowledge then appears in the record as possessed by Coady which should be regarded as imputable to the plaintiffs in error? It would seem that all the agent Coady knew was that Schmitt was a partner in the business of running the Oasis Night Club. Whether Schmitt owned any interest in the property located in the building and insured seems not to have been communicated to Coady if the testimony of the plaintiff Boler and that of Coady in the record is alone considered. For aught that Coady knew, as evidenced by the testimony of these two witnesses, Boler may have owned all the property used in the business and Schmitt may have held his partnership interest by virtue of the services performed by him in connection with such business, a very common partnership arrangement. In brief, this evidence, as we view it, is very far from clearly establishing what interest Schmitt had in the insured property. It hardly proves clearly and distinctly that, as alleged in plaintiffs' amended petition, Schmitt was a "joint owner" of said property with Boler and that Coady knew it, but was of decidedly indefinite and uncertain character.

In Smeesters v. New Denmark Mutual Home Fire Insurance Co., 177 Wis. 41, 187 N. W. 986, citing 40

Cyc. 259, the court declares that: " 'A waiver exists only where one with full knowledge of a material fact does or forbears to do something inconsistent with the existence of the right or of his intention to rely upon that right.' "

In Ordway v. Continental Insurance Co., 35 Mo. App. 426, 436, 437, the court remarked:

"But in the case at bar the defendant's agent Coon, effecting the insurance, or indeed any agent or officer of the defendant, did not have knowledge, full and complete, of said concurrent insurance.

"From the most favorable light, gathered from the evidence, in which we can put this case for the plaintiff, it would seem that all that Coon, the agent, was apprised of was, that there had been other insurance, but that it had about expired, and he, Coon, agreed to waive the existence of such concurrent insurance, as it had only a day or two to run, or would expire 'in a few days,' as he was advised by plaintiff. The defendant company then was not informed, by the plaintiff of the true condition, to-wit: That there was another policy on the property with yet several months to run, as was the fact in relation to the policy of the 'Phoenix' Company."

The rule announced in Progress Spinning & Knitting Mills Co. v. Southern National Insurance Co., 42 Utah 263, 130 P. 63, is:

"We think it is necessary, as stated by the Supreme Court of Illinois in the case above referred to (Mechanics' Ins. Co. of Philadelphia v. Hodge, 149 Ill. 298, 37 N. E. 51), that it be shown that the agent who issued the policy had full knowledge respecting the use and condition of the property, and then from his acts and conduct, considered in connection with such knowledge, a waiver might be implied. A condition in an insurance policy like the one now under consideration is of the essence of the contract of insurance and should not be deemed to be waived, unless the company through its authorized agent or otherwise is shown to have had full knowledge that the property was not devoted to

the use specified in the policy, and that the use to which it was being devoted materially increased the hazard. When such is made to appear, and it is also made to appear that after having full knowledge as aforesaid the company does not within a reasonable time cancel the policy but continues it in force, it may not thereafter, in case of loss through fire, insist upon the forfeiture of the policy."

In Spicer v. Hartford Fire Insurance Co. of Hartford, Conn., 171 Va. 428, 199 S. E. 499, where a fire insurance policy provided that it should be void if the insured did not own the realty in fee simple or if the insured should have any other contract of insurance on the property and that the insurer was not bound by any statement of its agent not contained in the application for such insurance, the fact also appeared that insured told the agent to make the policy payable to insured and his wife, as another agent had done, it was held that the knowledge of the agent obtained by the communication did not impute to the insurer knowledge that insured did not own the land and that there was additional insurance on the property and did not estop the insurer from denying breaches of conditions contained in the insurance contract. See, also, Gutman v. United States Casualty Co., 241 App. Div. 752, 270 N. Y. S. 160.

It would seem, under these authorities, that a prima facie case of waiver through imputed knowledge was hardly made out by the plaintiffs in the instant litigation against the defendant insurers. However, if we may look to the testimony of Schmitt as given in his deposition, his interest in the insured property is there quite fully described, as we have already seen. As heretofore pointed out that deposition was excluded only because it was offered as rebuttal testimony. While this ruling would ordinarily be regarded as technically a proper one, still we feel that the material portions at least of the testimony in said deposition

should have been admitted. We think such testimony should be examined here to aid us in a proper disposition of the case and for the purpose of accomplishing justice between the parties. When all is said that is what rules of procedure should be designed to accomplish.

Many decades ago, when rules of procedure were far more strict and enforced much more precisely than at present, in Richardson v. Lessee of Stewart, 4 Binney 198, Chief Justice Tilghman of the Supreme Court of Pennsylvania said:

"It is objected by the plaintiff's counsel, that the deed was kept back, till the testimony on both sides was gone through, and for that reason alone should have been rejected as contrary to the established order of trial. I should be very tender in rejecting material testimony because offered at the last hour, unless it had been kept back by trick, and the adverse party had been deceived and injured by it."

After considering the evidence thus excluded to be "not of that kind" the learned jurist concluded that:

"As it appears to me that the evidence might have been in some respects material, I am of opinion that it was improperly rejected,"

and the judgment was reversed.

In Viley v. Wall, 154 La. 221, 236, 97 So. 409, we find the court using this language:

"It is true that the plaintiff did not call for the books of the defendant company until the case was with him in rebuttal; but, in view of the experiences of the other stockholders, to his knowledge and that of his attorney, who had represented some of them in the several efforts to get an inspection of the books, without success, we think it was the duty of the lower court to have reopened the case for that purpose, and to have allowed a reasonable time for their production and inspection."

Much in line with the last two citations, the Supreme

Court of Mississippi in Roney v. State, 167 Miss. 827, 150 So. 774, said:

"So it is that appellate courts do not attempt to lay down precise rules for the control of the discretion of the trial courts in this matter, else the discretion would be unduly limited and hampered; but there is a rule which will be found of substantial aid in this connection, and while obviously not at all inclusive of all cases, it will cover most cases. That rule is that when the question is not free from doubt whether the evidence offered in rebuttal is that which belongs to the evidence in chief, or whether it is rebuttal evidence proper, the court should resolve the doubt in favor of the reception in rebuttal where (1) its reception will not consume so much additional time as to give an undue weight in practical probative force to the evidence so received in rebuttal, and (2) the opposite party would be substantially as well prepared to meet it by surrebuttal as if the testimony had been offered in chief, and (3) the opposite party upon request therefor is given the opportunity to reply by surrebuttal."

The Supreme Court of Rhode Island in the course of its consideration of the point, in Souza v. United Electric Rys. Co., 49 R. I. 430, 143 A. 780, remarked:

"The rules of practice require that when the plaintiff has the burden of proof he must first give all of his evidence supporting the affirmative of the issue, but he is not bound to anticipate the defense. In rebuttal he is strictly entiled to give only such evidence as tends to answer new matter introduced by defendant. Thompson on Trial, vol. 1, §§ 343, 345. The rule regulating the order of proof is a rule of practice intended to promote the orderly and expeditious trial of cases and to prevent surprise of an adversary. The application of this rule is in general left to the judicial discretion of the trial court. 4 Wigmore on Evidence, par. 1867. The aim of the court in regulating the course of proof in each case should be to promote justice. Plaintiff, by improperly withholding evidence, should not be permitted thereby to gain an unfair advantage over his adversary. On the other hand, material evidence should

not be rejected simply because it is offered out of the regular order, when plaintiff is not guilty of trickery, and his adversary is not in fact prejudiced."

In 1 Thompson on Trial (2d Ed.) 354, Section 346, the eminent author says that the proper rule to guide the trial court in ruling upon evidence when offered in rebuttal and, strictly speaking, out of order is that:

"Material testimony should not be excluded because offered by the plaintiff after the defendant has rested, although not in rebuttal, unless it has been kept back by a trick, and for the purpose of deceiving the defendant and affecting his case injuriously."

This statement of the law as given in the text last cited is quoted verbatim and followed in The Director of Lands v. Roman Catholic Archbishop of Manila, 41 Phil. Rep. 120, and the court adds: "These principles find their echo in Philippine remedial law." And it also states that: "Even at the risk of violating legal formulae, an opportunity should be given to parties to submit additional corroborative evidence in support of their claim of title, if the ends of justice so require."

Similarly 64 C. J. 157 announces that:

"One cannot be permitted to gain an unfair advantage by withholding evidence improperly, but material evidence proper in chief ought not be rejected merely because not offered until rebuttal not kept back by trick and where its reception will not prejudice the adverse party. The admission, in rebuttal, of evidence proper in chief has been held not objectionable where such evidence was inadvertently omitted, or was erroneously rejected when offered at the proper time, where the adverse party is given an opportunity to reply to it, or does not object, or where it is necessary to arrive at the truth."

It would seem that no injustice to any of the parties would have resulted from the admission of the material portions of the Schmitt deposition. The deposition in its entirety was comparatively short and would have

consumed very little time in its presentation. 1 Thompson on Trials, 2d Ed. Section 346, heretofore cited, also says that: "The better view, however, is that where the plaintiff's prima facie case is vigorously assailed, he should be allowed to introduce in rebuttal additional corroborating evidence." We think in that connection that certainly the same rule should obtain when plaintiffs' prima facie case appears as in the cases under consideration relative to the point in question not only uncertain and indefinite but it is questionable whether sufficient proof was offered and admitted to establish the same. If the defendants had found it necessary to introduce evidence in surrebuttal in consequence of the reception of the material evidence contained in the deposition, as pointed out by the text last cited (Section 346, Page 356) "it is no ground of exception" that introduction of such evidence might have necessitated allowing defendant to give evidence in surrebuttal.

It is evident, also, that the plaintiffs could have avoided the objection raised in several ways, viz., by requesting that their case in chief be reopened or by dismissing the causes without prejudice and resuming the litigation over again. Under the peculiar circumstances before us, as heretofore suggested, we think we should examine and review, in the interest of ascertaining the truth, the excluded testimony which was material in the deposition given by A. E. Schmitt. Doing that we are able to learn that Schmitt did have an actual interest in the insured property, and that the interest of Boler therein was "other than unconditional and sole ownership" within the terms of the policies in litigation. We learn further that Coady was explicitly informed of this situation.

Nevertheless Coady as a matter of fact refrained from informing the Wheeler Agency of this important data communicated to him by Schmitt and Boler, as

related hereinabove in the review of Schmitt's testimony contained in said deposition. Why? Apparently for several reasons. He knew that Schmitt and Boler desired the insurance in Boler's name only in order to carry out their scheme of misleading the authorities in the retention of a liquor license unlawfully, viz., the retention of two licenses by Schmitt and Boler where only one was proper; and he knew, also, that he would lose his commissions as an agent for obtaining this insurance business from these parties if he disclosed the true situation to the Wheeler Agency; in other words the self-interest of Coady and a violation of the state liquor laws concerning the issuance of licenses was involved. This is apparent from the terms of the statutes hereinbefore quoted. We can hardly assume that the Wheeler Agency would have issued the policies in the record at bar if the true facts had been submitted to it. Under such circumstances will the knowledge of the agent, no matter whether limited in authority or not, be imputed to the principal?

26 C. J. 299-300, Section 370, after announcing the rule governing the knowledge of an agent imputed to an insurer that, "It is declared sufficient that at the time of the issuance of the policy the agent knows, no matter from what source his information was derived, that one of the conditions of the policy is inconsistent with the facts," declares also that: "But there is an important exception to the rule. The insurer is not chargeable with the knowledge of his agent acquired in a transaction wherein his duty to disclose the facts to the insurer is opposed to or conflicts with his own interest or the interest of another person for whom he acts." And 2 Couch Cyclopedia of Insurance Law 1550, Section 525, reads thus:

"Again, the rule which imputes an agent's knowledge to the principal does not apply where the insured is acquainted with circumstances plainly indicating that the agent would not advise his principal."

In Rocco v. Northwestern National Insurance Co. (1930) 1 D. L. R. 472, the court laid especial emphasis on the point that "notice to or knowledge of an agent is not notice to or knowledge by the company unless the circumstances are such as to justify the opinion that the agent would be likely to communicate the information to those in charge of the affairs of the company." This rule was subsequently followed and applied in Dorsht v. Trans-Canada Insurance Co. (1933) 1 D. L. R. 509. See, also, 2 Mechem on Agency 1399-1400, Section 1815. It may not be amiss to note here, also, that Mr. Justice Harlan in American Surety Co. v. Pauly, 170 U. S. 133, 18 Sup. Ct. Rep. 552, 42 L. Ed. 977, used this language:

"The presumption that the agent informed his principal of that which his duty and the interests of his principal required him to communicate does not arise where the agent acts or makes declarations not in execution of any duty that he owes to the principal, nor within any authority possessed by him, but to subserve simply his own personal ends or to commit some fraud against the principal. In such cases the principal is not bound by the acts or declarations of the agent unless it be proved that he had at the time actual notice of them, or, having received notice of them, failed to disavow what was assumed to be said and done in his behalf."

Supplementary to the foregoing is the statement appearing in Mutual Life Insurance Company of New York v. Hilton-Green et al., 241 U. S. 613, 36 Sup. Ct. Rep. 676, 60 L. Ed. 1202, where Mr. Justice McReynolds said:

"The general rule which imputes an agent's knowledge to the principal is well established. The underlying reason for it is that an innocent third party may properly presume the agent will perform his duty and report all facts which affect the principal's interest. But this general rule does not apply when the third party knows there is no foundation for the ordinary

presumption,—when he is acquainted with circumstances plainly indicating that the agent will not advise his principal."

Additional authorities of similar purport could readily be supplied.

Under the situation disclosed then in the case at bar the insurers, so far as the records before us establish, having at the time of their issuance neither actual nor imputed knowledge of the violation of the provisions of the policies dealing with "unconditional and sole ownership" of the insured property, the legal conclusion in view of what has hereinbefore been said would appear to be that the policies of insurance at bar were void and no recovery could be had upon them, the only duty incumbent on the insurers being a return of the premiums paid.

If further light can be shed upon the issues presented on this phase of the cases at bar, viz., that dealing with the "unconditional and sole ownership" clauses in the policies aforesaid, than now obtains from what has been submitted in these records, the parties will be afforded the opportunity to supply it by a retrial of those issues only, if such action be deemed by them to be appropriate, the same to be guided by the views hereinabove expressed. We accordingly reverse the judgment and remand the several causes to the district court of Natrona County.

*Reversed and remanded.*

KIMBALL and BLUME, JJ., concur.