Evelyn K. Koon,

Plaintiff and Appellant

v.

Lloyd C. Sampson, also known as L. C. Sampson,

Defendant and Respondent.

(No. 2312; May 28th, 1945; 159 Pac. 2d. 366)

For the plaintiff and appellant the cause was submitted upon the brief and also oral argument of Charles E. Lane of Cheyenne, Wyoming.

For the defendant and respondent the cause was submitted upon the brief and also oral argument of Ray E. Lee of Cheyenne, Wyoming.

500

## OPINION

RINER, Justice.

This proceeding by direct appeal was brought to review a judgment of the district court of Laramie County, in an action wherein Evelyn K. Koon was plaintiff, and Lloyd C. Sampson, was defendant. The case was tried to the court without a jury, and upon the conclusion of plaintiff's evidence, defendant having moved for judgment in his favor, this motion was sustained and a judgment against the plaintiff was entered.

The action aforesaid was brought to recover a sum of money alleged to be due on account of a contract for sale of certain law books by plaintiff's assignor to the defendant who is an attorney at law. The defense was that nothing was due plaintiff on this contract on account of the failure of the vendors to perform the terms thereof and also on account of a settlement had between the parties which concluded the matter and released the defendant from any further liability thereon.

The testimony of but two witnesses was presented to the trial court, that of the defendant called for cross-examination and that of counsel for the plaintiff. At the conclusion of their testimony the motion mentioned above was made with the result as stated. The facts disclosed by the testimony of these witnesses and the other evidence introduced in connection therewith are substantially as follows:

On October 5, 1927, the defendant signed an order form partially printed, partially in handwriting and

partially in typewriting, which directed the delivery to him "carriage paid, a complete set of United States Supreme Court Reports, Official Edition Reprint, consisting of volumes 1 to 271 Official Edition in 28 books, at 99c per official volume (271 x 99c=$268.29)". He agreed to pay for said books the sum of "$5.00 monthly first year; $7.50 monthly second year; and then $10.00 monthly until paid, without interest." The contract then stated "Also enter my subscription for advance parts and bound volumes of the Reports of the United States Supreme Court, to be delivered to me as issued, for which I agree to pay $6.00 per year. Continue my subscription until otherwise advised." These books were to remain the property of "your company or your assigns" until paid for. Provision was made for declaring the balance of installments due in case of failure to make any one within 60 days after maturity. The order and the defendant's acceptance thereof were to constitute the entire contract. The principal portion of this order form was printed, the terms above stated for payments under it were in handwriting and in the margin were written in typewriting the names "Banks Law Pub. Co., N. Y." and "W. H. Courtright Pub. Co." At the bottom of this order form are also written in blue pencil the words "Chge. to Courtright."

This contract is alleged in plaintiff's pleading to have been assigned to her by the "Banks Law Pub. Co." and a written assignment to that effect was offered in evidence by plaintiff's counsel but it seems to have been rejected by the court. There appears to be no proof that the W. H. Courtright Pub. Co. transferred any interest in the contract to the plaintiff. Also the assignment pleaded by plaintiff in her "second amended petition", the pleading upon which the case was tried for the plaintiff, states that it was "signed, sealed and delivered this 1st day of October, A. D.

1942". It purports to be signed by "The Banks Law Pub. Co., by W. E. Baldwin, President", and this signature is attested by Margaret A. Ziegler, Secretary. There is attached thereto an acknowledgement by W. E. Baldwin as such president which also is dated October 1st, 1942, and the acknowledgement seems to have been taken by one Lucille I. Dittrick as Notary Public. However, the assignment offered in evidence referred to above appears to be dated the 18th day of April, 1939, is signed by that company by W. E. Baldwin, President, and the corporate signature is attested by M. J. Hubbs, Secretary. The acknowledgement attached to the instrument is dated March 6, 1943, and taken by a Notary Public, Emilia E. Urban. It is obvious that the assignment pleaded by plaintiff is not the same instrument offered in evidence by her. However, the assignment thus pleaded appears to have been admitted by defendant's answer, and to be regarded by him as before the court.

According to the testimony of the defendant which stands in the record undisputed, the twenty-eight books mentioned in the order form were delivered to him and he made a number of payments on account thereof. These payments were all made to the W. H. Courtright Pub. Co., or to W. H. Courtright, personally. The defendant also stated without objection, "I might explain that I never had any dealings with the Banks Law Publishing Company at all except through Courtright. I never made any payments to them or never entered into any contract with them"; that "I made that agreement with the only party I ever dealt with, with reference to those books, and that was with Bill Courtright; that Bill Courtright was the one who sold me those books"; that "The six dollars that I paid him the day I signed the order for the advance volumes I never got any consideration for. The books were never de-

livered, none of them. As a matter of fact, if I may be permitted, I might say that Courtright told me that he wasn't able to get those for delivery"; and that on December 29, 1930, Courtright and the defendant had a settlement for those books, the testimony of the latter concerning the matter being, "They agreed to take the books back, and he said that if I would pay him twenty-five dollars he would take the books back. They weren't printing advance sheets, I was informed, but I have since been informed that they have printed some bound volumes since then, but subsequent to 1927, he told me he was unable to supply those volumes and I would have to get them from another outfit, and he said, "If you will pay me twenty-five dollars I'll take the books back.' That is exactly what it was, and that settlement was made then." It is in evidence also that at that time the sum $25.00 was paid to the W. H. Courtright Pub. Co., by the defendant. The books were by agreement left at defendant's office. Nothing more appears to have been done or any question raised relative to this entire transaction after the payment last mentioned until May 1, 1939, the date this action was commenced. Meanwhile, sometime prior to July 8, 1938, the exact date not appearing in the record, W. H. Courtright died.

From the evidence which we have reviewed above and the record before us in its entirety we think the trial court could properly have found that the W. H. Courtright Pub. Co., and W. H. Courtright, were the real owners of this contract at the time this settlement was made and that having sold the books to the defendant and being unable to fulfill the terms of the contract regarding them, agreed to the settlement to which the defendant testified as recited above. On no other hypothesis can we understand why the parties who sold these books to the defendant would have done nothing

at all to question the status of the matter for more than eight years after the last payment of $25.00 was made by the defendant to the W. H. Courtright Pub. Co., for the purposes stated by the defendant. It is apparent that all parties concerned knew of this payment and though the contract called for regular monthly remittances, the last one being due September 5, 1930, still no steps were taken by either the Banks Law Pub. Co., or the W. H. Courtright Pub. Co., or Courtright himself, to call this situation to defendant's notice by correspondence or otherwise after the month of December, 1940. There is nothing in the record which we can find, and we have given it careful study, which renders the defendant's version of the transaction as detailed above unreasonable, improbable, or untruthful. The undisputed evidence in the case then supports the trial court's judgment.

Again, viewing the facts presented by this record in another light, viz., that of agency, simply, we find that Mr. Story, in his work on Agency (section 17), says: "A general agency properly exists where there is a delegation to do all acts connected with a particular trade, business, or employment." And the same author, in section 126, says: "In the former case (referring to a general agent) the principal will be bound by the acts of the agent within the scope of the general authority conferred on him, although he violates by those acts his private instructions and directions, which are given to him by the principal, limiting, qualifying, suspending, or prohibiting the exercise of such authority under particular circumstances."

It would seem that the trial court could very well have concluded that the W. H. Courtright Pub. Co., or W. H. Courtright, was a general sales agent of the Banks Law Pub. Co., to dispose of books of the character mentioned above. The former sold the books,

procured their delivery, collected payments therefor, and when unable to furnish additional volumes for the set, arranged for and received a final payment which was to conclude the matter. After this was done neither the Banks Law Pub. Co., or the W. H. Courtright Pub. Co., or W. H. Courtright, or anyone representing them during a period of more than eight years, suggested that anything was done in handling this entire transaction in excess of any authority granted by the principal. In the case at bar there is not a scintilla of evidence indicating that there was any limitation whatsoever on the authority possessed and exercised by the W. H. Courtright Pub. Co., or W. H. Courtright, in the conduct of this transaction from its inception to its end. If there had been any such it would have been extremely easy for the plaintiff to have offered proof of it. The principal at the time this case was tried knew or should have known absolutely what the powers of the agent were and what had been done thereunder.

Especially confirmatory of the views expressed above both as to ownership of the contract by the W. H. Courtright Pub. Co., and the general agency of that concern in this transaction is a circular issued by it advertising and soliciting orders for the set of books herein involved. This circular we find included in the record before us. The name of the Banks Law Pub. Co. does not appear either on the display first page of this circular or any of its three following closely printed pages. The only name given in the circular is that of the W. H. Courtright Pub. Co. Among the other statements therein we observe the following: "Terms will be arranged for those desiring to purchase on the installment plan. A cash discount will be allowed those paying all cash". The broad powers exercised in this matter by the W. H. Courtright Pub. Co. are manifest.

It is true this circular was, upon objection of the defendant, excluded by the court but the rule seems to be as tersely stated in Belorodker Loan & Inv. Co., v. Goldenberg, 253 Ill. App. 416:

"When competent evidence is offered and an objection thereto is sustained. a court of review will consider the case the same as if the evidence had been admitted."

In New Hampshire Fire Ins. Co.. v. Boler, 55 Wyo. 530, 102 Pac. 2d 39, this court remarked:

"However, if we may look to the testimony of Schmitt as given in his deposition, his interest in the insured property is there quite fully described, as we have already seen. As heretofore pointed out that deposition was excluded only because it was offered as rebuttal testimony. While this ruling would ordinarily be regarded as technically a proper one, still we feel that the material portions at least of the testimony in said deposition should have been admitted. We think such testimony should be examined here to aid us in a proper disposition of the case and for the purpose of accomplishing justice between the parties. When all is said that is what rules of procedure should be designed to accomplish."

See also Erickson v. Grande Ronde Lumber Co., 162 Ore. 556, 92 Pac. 2d 170; Iowa Electric Co. v. Home Ins., —— Iowa ——, 17 N. W. 2d 414.

The contention is made for appellant that the district court should have made findings of fact and conclusions of law in connection with the judgment rendered, a request for this to be done having been made by plaintiff's counsel prior to the trial of the action, and error is assigned because this request was not heeded.

Where it was complained that the findings of fact and conclusions of law made by the trial court were wrong, it was said in Scott v. Wyoming Oils, Inc., 52 Wyo. 433, 75 Pac. 2d 764. that:

"The plaintiff complains of a number of the conclusions of fact and law announced by the trial court, as inaccurate and unsupported by the evidence, but inasmuch as all the evidence introduced on the trial of the case has been brought up for our examination, we must scrutinize the entire record before us to determine whether the judgment challenged by the assignments of error presently to be mentioned is improper. Hilliard v. Douglas Oil Fields, 20 Wyo. 201, 214, 122 Pac. 626; Sewell v. McGovern, 29 Wyo. 62, 73, 74, 211 Pac. 96; Delfelder v. Poston, et al., 42 Wyo. 176, 195-196, 293 Pac. 354."

In the case at bar all the evidence submitted to the district court is before us and we must determine from an examination thereof whether the judgment rendered is improper. If the judgment is correct, in view of all the evidence in the case, any error in declining to make findings of fact and conclusions of law, if error there was, could hardly be regarded as prejudicial.

Additionally on this point it may be observed that in Broderius v. Anderson, 54 Wash. 591, 103 Pac. 837, a statute provided (§5029, Ballinger's Ann. Codes & St.) :

"Upon the trial of an issue of fact by the court its decisions shall be given in writing and filed with the clerk. In giving the decision, the facts found and the conclusions of law shall be separately stated. Judgment upon the decision shall be entered accordingly." It may be noted that this law resembles that of §89-1321, W. R. S. 1931, infra. Holding that findings of fact and conclusions of law need not be stated where the court dismissed plaintiff's action upon the conclusion of his evidence upon the defendant's motion for such a result, the reviewing court said, inter alia: "When the court dismissed the cause upon the grounds of respondent's motion, it did not decide a question of fact. It simply decided as a matter of law that the evidence introduced by appellants, treating it as uncontradicted, did not entitle them to judgment. Thompson

v. Myrick, 24 Minn. 4, 10; Fleming, etc, Co., v. Garretson, 52 Hun, 614, 5 N. Y. Supp. 344; Golden v. Newbrand, 52 Iowa, 60, 2 N. W. 537, 35 Am. Rep. 257; 8 Ency. Pl. & Pr. 937. We are of the opinion that, unless the judgment is based upon some affirmative fact or facts, findings are unnecessary to its support, and the failure of the court to make findings in such a case, whether requested or not, is not error."

Where the court at the close of plaintiff's case in an action tried before a court and jury directed a verdict for the defendant it was urged that §11421-2, Ohio Gen. Code, was applicable and the court erred in not making written conclusions of fact and conclusions of law separately stated. Holding this not to be so the Supreme Court of Ohio, in Bauer v. Cleveland Ry. Co., 141 Oh. St. 197, 47 N. E. 2d 225, used this language:

"On the other hand, in directing a verdict, the court in effect, assumes and is obliged to assume that all the facts supported by evidence are true, and, of course, they must be so considered in any further review of the case. Under such circumstances the court does not find facts, but determines that, as a matter of law, the plaintiff's evidence treated as uncontradicted does not entitle him to judgment. *Broderius* v. *Anderson,* 54 Wash. 591, 103 P. 837. And even though the action of the court in the case at bar be considered a finding of fact, it was an undisputed fact and furnished the plaintiff with all that was necessary 'with a view of excepting to the court's decision upon questions of law involved in the trial.' A court is not required to make findings of fact where the evidence is undisputed. *Mobile Drug Co.* v. *United States,* 39 F. (2d), 940; *Milwaukee Land Co.* v. *Ruesink,* 50 Mont., 489, 148 P., 396; *Fidelity Trust Co., Admr.* v. *Palmer,* 22 Wash. 473, 61 P., 158."

Section 11421-2, supra, is quite like our §89-1321, W. R. S. 1931, which reads:

"Upon the trial of questions of fact by the court, it shall not be necessary for the court to state its findings, except, generally, for the plaintiff or defendant, unless

one of the parties request it, with the view of excepting to the decision of the court upon the questions of law involved in the trial, in which case the court shall state in writing the conclusions of fact found separately from the conclusions of law."

See also Darlington v. Board of Commissioners of Cloud County, 75 Kan. 810, 88 Pac. 529; Levine v. Charlow, 5 N. Y. S. 2d 954.

Other assignments of error and contentions advanced thereon are presented by appellant but upon careful examination we do not deem them of such a material character as to require discussion. The judgment of the district court upon the evidence before it was correct, as we view the record, and that judgment will be affirmed.

*Affirmed.*

BLUME, C. J., and KIMBALL, J., concur.